W. D. RENSHAW, APPELLANT, *v.* MARY TAYLOR ET AL.

PARTIES TO SUIT—REPRESENTATIVES OF DECEASED PERSON.—Where a suit of foreclosure was brought against the executors of the estate of a deceased mortgagor: *Held,* that the executors represent the estate of the decedent so far as the same vests in them for the creditors and heirs; but that, the title descending to the heirs, the executors do not have the same estate in the land that the deceased had and that the heirs are necessary parties in the foreclosure suit.

SUBSTITUTED AGREEMENT—DEFAULT.—The parties to a foreclosure suit, during the pendency of the same, entered into an agreement by which the mortgagee agreed to take a less sum than that due in consideration of the present payment of a part due under the new agreement and of the costs of the foreclosure and of an agreement to pay the balance at a stated time. It was agreed that the old mortgage should stand as a security for the debt. The suit was dismissed without prejudice. The mortgagor made default after the first payment, held that the new agreement was substituted for the old and that the mortgagor's liability must be determined by it.

DECREE—CLAIM NOT ESTABLISHED BY.—A decree of foreclosure in a suit where the heirs of the mortgagor were not made parties, will not be taken as establishing the mortgagor's claim against the estate; but will be treated as wholly void.

MORTGAGOR—ESTOPPED TO DENY LEGALITY OF POSSESSION.—A mortgagor in possession will not be allowed to answer to a claim for rents and profits that his possession was not lawful.

APPEAL from Benton County.

In August, 1856, the appellant sold Stephen Taylor certain stock, for which Taylor agreed to pay the proceeds of three thousand seven hundred and twenty-five dollars of Oregon war scrip, or one thousand five hundred dollars in lawful money in case the scrip was not paid within two years from that date. Taylor and one McClure executed to the appellant a bond as security for the performance of this

contract, and to secure the bond Taylor executed a mortgage upon the land in question. Taylor failed to perform the conditions of the bond and mortgage, and in March, 1863, the appellant brought suit to foreclose the mortgage.

Afterwards, in November, 1865, while the foreclosure suit was pending, the appellant and Taylor made an agreement, by which the appellant received thirty-one ounces of gold, estimated at four hundred and sixty dollars, and Taylor agreed to pay five hundred dollars in greenbacks before June 1, 1866, and such further sum before July first of the same year as was required to make up the difference between the value of the thirty-one ounces of gold and one thousand dollars, together with the attorneys' fees and costs in the foreclosure suit, in full satisfaction and discharge of the bond and mortgage. The mortgage was to remain as security for Taylor's performance of the new agreement.

The suit was under this agreement dismissed without prejudice. The gold dust assayed four hundred and twenty-six dollars. Taylor made no further payment, and died intestate in 1867.

James Taylor and John D. Walton became administrators of the estate, and thereafter the appellant caused his claim against Stephen Taylor, deceased, to be presented to the administrators for settlement, by whom it was rejected.

The appellant thereupon sued to foreclose his mortgage. The heirs of Stephen Taylor were not joined with the administrators in the suit. A decree of foreclosure was had for two thousand four hundred and eighty-five dollars, the amount due upon the bond and mortgage under the original agreement, and the property was sold to the appellant for one thousand five hundred and fifty dollars. The sale was duly confirmed.

This suit was brought against the heirs of Stephen Taylor to quiet the appellant's title. It was also prayed that if it should be held that the interests of such heirs had not been foreclosed in the former suit, that a foreclosure be decreed in this suit. After a reference the court found that there was due the appellant on the bond and mortgage, and for taxes paid, the sum of two thousand three hundred and

thirteen dollars and eighty-four cents, and allowed the rent to reduce this sum to nine hundred and sixty-four dollars and four cents, and gave a final decree for that sum.

The findings and decree were upon the substituted agreement of 1865. The appellant appeals therefrom.

*R. S. Strahan and John Burnett,* for appellant:

Counsel for respondent insist that this mortgage is a " claim " within the meaning of sections 1101 and 1102, and that no suit can be maintained to foreclose the same unless it be first presented to the administrators and be by them rejected. There are several objections to this theory. 1. Sections 1129 and 1130 of the code provide for the sale of mortgaged premises, without the mortgage being presented as a claim, and without notice to any one. The proceeding under those sections would be *in rem.;* 2. This is not " an action " against an executor or administrator, but a suit. (Code, secs. 373 and 374.)

And when persons other than executors or administrators may be parties, by reason of the acts of their ancestors, there is no law requiring the claim or cause of action to be presented to an executor or administrator before such persons can be sued. (Code, secs. 373, 374; *Schadt* v. *Heppe,* 45 Cal. 433; *Christy* v. *Dana,* 42 Id. 175; 21 Id. 25.)

But we claim that these heirs were neither necessary nor proper parties to a suit to foreclose a mortgage upon real property. Sections 1129 and 1130 of the code make ample provision to secure the rights of heirs. If they do not avail themselves of those sections, then section 468 of the code authorizes just such a foreclosure as is in question here. Its language is too explicit to admit of construction: " All causes of suit by one person against another, however arising, survive to the personal representatives of the former and against the personal representatives of the latter."

This bond and mortgage is a " cause of suit" which survived against the personal representatives of Stephen Taylor, deceased. This view would entitle the plaintiff to a decree quieting his title. Under a statute by which the personal representative of a deceased person succeeds to the

lands as well as the personal property, for the purpose of administration the executor or administrator becomes a necessary party in the foreclosure of a mortgage in place of the heir. (*Harwood* v. *Moge*, 8 Cal. 580.)

W. W. *Thayer*, for appellant:

The mortgage is simply a personal charge upon the property. The property does not descend to the heirs as at common law, "by single operation of law," but it descends to them, "subject to the possession of the executor or administrator, and to be applied to the satisfaction of claims against the estate." (See sec. 1160 Civ. Code, p. 337.) And not until the administration is completed are the heirs entitled to the possession. (Sec. 1088 Id., p. 324.) It would certainly be a great hardship in case of collateral heirs to require the mortgagee to look them up and make them parties. The effect of such a decree, in case it is held that the heirs are necessary parties, is not easily determined. In *Sheldon* v. *Bird*, 2 Root, Conn. 509, it was held that a decree in such a case was no bar to the heirs redeeming. In New York it is held that the executor may be joined in the bill for the purpose of holding him liable in case of a deficiency. (9 Paige, 90.) So in California, where the bill prays a deficiency in the mortgage debt, the administrator must be made a party. (9 Cal. 123.) If in such a case the mortgagee desired to make the mortgage debt a claim against the estate for any deficiency, after exhausting the mortgaged property, he would have made the representatives of the mortgagor parties, otherwise he could only expect to extinguish the heirs' interest, which, under our statute, as we have seen, is very uncertain indeed, and the interest or right of such representatives, which we have also seen extends to the use of the property during administration, could be barred in no other way. The solution of the question depends upon a correct determination of the amount of interest the heirs have in the property during administration. This, we submit, depends entirely upon the condition of the estate. If it is insolvent, as in the case at bar, then the heirs had no interest, for it must be applied in sat-

isfaction of the debts. On the contrary, had there been no debts they would have had a full and complete title, subject, of course, to a deprivation of possession for some period of time in case administration is had.

Under this view, ought the respondents to be allowed to assert any title to the land in suit? Equitably they have no title to it whatever. An honest effort has been made to apply it in extinguishment of the claim against the ancestors, and their attempt to take advantage of the circumstances of their not having been joined as parties to the proceeding is unconscionable. If they want the estate they should certainly disencumber it. The decree against the administrators established the amount of the claim, and the circuit court had no right to ignore it.

*John Kelsay and J. W. Rayburn,* for respondents:

The claim of appellants must have been presented to the administrators of the estate of Taylor for allowance or rejection before he could maintain an action upon it, or have foreclosed said mortgage at any time after the death of Taylor. (Civ. Code 421, secs. 1099, 1100–2; 27 Cal. 353; 1 Or. 324; 46 Cal. 161, 233.)

If the claim were presented and rejected he had two remedies—one at law on the contract to enforce the payment of the money agreed to be paid by July 1, 1861. (Code, 1864, p. 242, secs. 373–4; Id. 1864, p. 425, sec. 1103; 34 Cal. 226.) Or he might have instituted a suit in equity to establish his claim and foreclose said mortgage. (Civ. Code, p. 251, sec. 410.)

The heirs should have been made parties to the foreclosure suit mentioned in the complaint. (Civ. Code, p. 244, sec. 380; 2 Hill. on Mort. p. 168, sec. 85; Id. p. 170, sec. 170; 2 Barb. Chan. 176; 13 Ill. 503; 14 Id. 218; 12 Kan. 228; 65 Maine, 352; 9 Barb. 378; 4 Blackford, 379; 2 Van Sant. Pl. 75; Story Eq. Pl. secs. 175, 182, 196, 417, 509, 544; 4 Kent's Com. 228; 9 Kansas, 228; 27 Arkansas, 235.)

Having gone into equity, and his claim having been rejected, as he claims by the administrators of said estate, he,

in addition to said administrators, should have made the heirs of Taylor parties to said suit, and by so doing he could have established his claim, and at the same time have foreclosed his mortgage, as the heirs are the owners of the real estate, subject to the possession of the administrators and the payment of claims. (Civ. Code, p. 439, sec. 1160.)

The mortgagee has only a specific lien, similar in character to a general lien of a judgment and the title to the lands is in mortgagor, or his heirs. (4 Or. 110, 222; 46 Cal. 234.) It is sought to charge a specific parcel of the estate with this debt and mortgage. The creditors and heirs are interested in having the claim presented and established before sale. The mortgaged premises may be worth more than the amount of the mortgage and it may be to the advantage of the estate to satisfy the mortgage out of other funds and thus prevent a forced sale. (Civ. Code, p. 431, secs. 1129, 1130; 46 Cal. 232.)

The heirs have a right to an accounting before the sale of mortgaged property. (46 Cal. 154, 233; 13 Ill. 503; 14 Id. 218; 9 Kan. 228; 12 Id. 223; 3 Mich. 331; 1 Ohio St. 373; U. S. Digest 1875, pp. 507, 723, secs. 92, 144.)

The only effect of this foreclosure suit and the sale under it was to assign the mortgage to the purchaser. (25 N. Y. 320; 12 Wis. 581; 14 Id. 213.)

A mortgagee in possession is bound to account for the rents actually received. By taking possession he imposes upon himself the duty of a provident owner, and he is bound to recover what such an owner would, with reasonable diligence, have received. (4 Or. 295; 4 Kent, 166; 28 Cal. 309; 1 Hill. on Mort. p. 439—444, sec. 5; 2 Equity, Leading Cases, 2010.)

The mortgagee has only a temporary possession of the real property. (2 Or. 338; 4 Id. 330.)

By the Court, BOISE, J.:

In the pleadings issue is made as to the validity of the decree of foreclosure obtained by the appellant against James Taylor and John D. Walton, the administrators of Stephen Taylor, deceased. It is claimed that this decree,

which is set out in the complaint, in substance is valid, and operates to foreclose the rights of the heirs of Stephen Taylor to the land in question, who were not made parties to that suit. The determination of this question depends on the construction of sec. 463, p. 206 of the code, which provides: "That all causes of suit by one person against another, however arising, survive to the personal representatives of the former and against the personal representatives of the latter. When the cause of suit survives, as herein provided, the executors or administrators may maintain a suit in equity thereon against the party against whom the cause of suit accrued, or, after his death, against his personal representatives. Independent of this statute, the heirs should have been made parties, for the lands of the ancestor descending to them by operation of law they have an estate in them which they have a right to protect, and by the law, as now settled in this state, the mortgagor is the owner of the fee, subject to the lien of the mortgagee." (4 Or. 105.) And it is the settled law that the heir of the mortgagor should be a party unless the statute just referred to changes the rule.

. We will now proceed to consider what construction should be given to this language of the statute. To give it a literal construction, it would mean that if there be a suit which one party may maintain against another, he may maintain the same suit against his executor. This language does not necessarily exclude heirs. To foreclose a mortgage a party must sue the mortgagor, and must also make persons having a lien subsequent to the lien of the mortgagee parties. (Code, 411.) This is to give subsequent lien-holders an opportunity to redeem the land; and there is the same necessity for making heirs parties, for they also have the right to redeem. Section 380 of the code seems to contemplate that all persons who are to be affected by the decree should be made parties. No person should be deprived of his estate by a decree to which he is not made a party and who has not had his day in court. (Story's Eq. Pleadings, secs. 196, 415, 175; 2 Hill on Mort. 168, 170; 2 Van Santvoord, 75, 76.)

It was not the intention of the statute to do more than provide that the executor should represent the estate of his decedent, so far as the same vested in him as trustee for the creditors and heirs, but the title descending to the heir, the executor does not represent the land or have in it the same estate that the deceased had. The executor and heir are both vested with interests in the land which they respectively represent, and the sum of these interests is equal to the estate which was in and represented by the deceased. This view may be taken of the statute and be consistent with the provisions of section 380 and of the well established practice of courts of equity in such cases.

In order to bind the heirs of Stephen Taylor in the suit of foreclosure named in the complaint, it was necessary that they should have been made parties, and that not having been done, their interest in the land was not foreclosed. It is claimed by the appellant that if said decree does not foreclose their interest in the land it is a valid and binding decree, so far as to establish the amount of appellant's claim against the estate of Stephen Taylor.

To this proposition several objections are made by the respondents: 1. It is claimed by the respondents that the claim was not properly presented to the administrators. The claim, as presented, embraced the original debt of one thousand five hundred dollars and interest, less a credit of four hundred and thirty dollars, paid in gold dust. In presenting this claim the appellant has disregarded the settlement made by the parties, which is indorsed on the bond, and claimed by the respondents to have been substituted for the debt named in the bond which the mortgage was given to secure.

We will first consider the question of the validity of this new agreement. A suit was pending to foreclose this mortgage and enforce the obligation named in the bond, which suit was discontinued on the execution of this new agreement, which is indorsed on the bond, and is as follows:

"Received of Stephen Taylor, Bristow & Co.'s receipt for thirty-one ounces of gold dust, sent by them to be assayed,

and proceeds of same, estimated at about four hundred and sixty dollars, when paid, to be credited on this bond. And I hereby agree, on settlement this day made, to accept one thousand dollars in gold coin (including said proceeds of dust) and five hundred dollars in greenbacks, both to be paid as below mentioned, in full satisfaction of the within bond and mortgage. I am to discontinue the suit now pending in Benton county; the old mortgage to continue in security for said payments.

W. D. RENSHAW.

"November 2, 1865.

" I hereby agree, on settlement of this bond as above, to pay said Renshaw five hundred dollars, greenbacks, on or before Jan. 1, 1866, and also to pay in gold coin whatever said proceeds of dust lacked of making one thousand dollars, say about five hundred and forty dollars, more or less, on or before July 1, 1866, with ten per cent. interest thereon, and I am to pay costs of said suit and attorney's fees.                       STEPHEN TAYLOR."

"November 2, 1865."

We think this agreement shows a sufficient consideration to support it. It was the settlement of a pending suit whereby the appellant must have thought he was securing to himself an advantage by getting a part of his debt and being relieved from this liability to pay the costs of the suit and the fees of his attorney incurred in prosecuting the same. This agreement was fully performed at the time and expressly substituted for the bond, and then became the agreement of the parties and binding on them. It was an agreement to take a less sum than that secured by the bond, in this, that interest was not included in it, but it was a part of the same debt for the cattle and horses.

The appellant's claim presented to the administrators for allowance included this unpaid balance with interest. This was simply claiming of the administrators more than was due appellant from the estate, and in such a case the administrator should have allowed what was still due on this claim for cattle according to the new agreement. A question is made as to whether any claim was presented, but the

evidence shows that it was presented and rejected, and that the decree named in the complaint was not void for want of proper presentation of the claim to the administrators.

The appellant after the rejection of his claim, could bring an action against the administrators and establish this claim, or he could foreclose the mortgage. The latter is what he attempted to do against the administrators alone. This we hold he could not do without joining the heirs, if there were any, and as the presumption is that there are heirs unless the contrary appears, we think the complaint was subject to a demurrer that it did not state facts sufficient to constitute a cause of suit, and showed that there was no jurisdiction in equity to grant the relief prayed for. We conclude, therefore, that the decree in that suit was wholly void which seems to have been the conclusion of the learned judge who tried this case in the circuit court.

That court proceeded to decree a foreclosure of the mortgage and ordered that the premises be sold to pay the amount still due thereon, taking said new agreement as settling the amount, which was correct as before stated.

The case was referred to a referee to ascertain the amount due on the mortgage under this new agreement, and also the amount of the rents and profits received by the appellant since he had been in possession of the premises under the sale on the decree referred to in the complaint.

It is claimed by the appellant that the court had no authority to make such a reference. He had such a right for the reason that it appeared in the pleadings that appellant went into the possession and had retained it. Where the plaintiff, who is a mortgagee, makes this admission in his complaint, it is a confession that he has received the rents and profits, and ought to account for them to be applied to extinguish the mortgage debt. It is proper for the court to appoint a referee to take such account and find the amount of the rents and profits, which ought to be applied towards the extinguishment of the mortgage debt.

There is considerable discrepancy in the testimony of the witnesses as to the amount of the rents and profits, showing that persons have different opinions as to the value of the

premises. In such cases where the amount has been ascertained by an intelligent referee who has had ample opportunity to judge in the premises, the court should defer something to his judgment; and unless the same is manifestly erroneous accept his findings as conclusive; for having heard the witnesses he can better determine the value of the testimony.

There is another question made by the appellant which is this: It is claimed that as under our statute the executor has the possession of the real property of his decedent, the rents and profits go to the executor or administrator and not to extinguish the mortgage debt. In this case the appellant has sued to foreclose his mortgage and acknowledges that he is in possession and has been for a long time. The administrators are not parties. The suit is between the appellant and the heirs.

The appellant being in possession, will not be allowed to say to his own advantage that his possession was other than lawful under the mortgage. It has been held by this court in *Roberts* v. *Sutherlin*, that a mortgagee in possession, with the consent of the mortgagor, after condition broken may maintain such possession until the payment is made. In this case, having received the rents and profits they should go to extinguish the debt. (4 Kent 166; 28 Cal. 309; 1 Hill. on Mortgages, 439.) It can be no disadvantage to the estate which is represented by the administrator, that the debt is in part canceled by the rents and profits in the possession of appellant. The appellant having already received a part of his debt secured by the mortgage has no claim for more than is due him, or to have the land condemned to be sold for a lien that has already been discharged.

Decree affirmed with costs.