Argued February 8, affirmed April 10, 1923.

SCHLEEF v. PURDY ET AL.

(214 Pac. 137.)

**Mortgages—Do not Create Estates.**

1.   A mortgage of real property does not convey the title to, nor create an interest or an estate in, the mortgaged property, but merely creates a lien or an encumbrance against the property, as security for the payment of a debt or the fulfillment of an obligation, and equity regards the debt as the principal thing, and the security as a mere incident to it.

**Mortgages—Create Personal Interest.**

2.   The interest created by the mortgage in the mortgaged premises is of a personal nature, like that which the mortgagee has in the debt itself, and whatever the mortgagee does with the land is auxiliary to the enforcement of payment of the debt.

**Mortgages—Before Foreclosure, Mortgage is Mere Chose in Action, not Subject to Sale Separate from Debt Secured.**

3.   Until foreclosure and sale, a mortgage is a mere chose in action, secured by a lien on the land, which gives the mortgagee no interest which can be sold separately from the debt itself.

Jurisdiction of equity over suits affecting real property in another state or country, see notes in 67 Am. Dec. 95; 69 L. R. A. 673; 23 L. R. A. (N. S.) 924; 27 L. R. A. (N. S.) 420.

Mortgages—May be Transferred by Transfer of Secured Debt.

4.  A mortgage given as security for the payment of a note may be transferred, either by the indorsement of the note and surrender of its possession, or, if the note is payable to bearer, by the mere delivery thereof, without any formal transfer of the mortgage.

Mortgages—Full Ownership of Property Remains in Mortgagor.

5.  The full legal and equitable ownership of the mortgaged premises remains in the mortgagor, and can be divested only by foreclosure and judicial sale.

Mortgages — Only Right Created is Right to have Land Sold to Satisfy Debt.

6.  The right conferred on the mortgagee by the mortgage is the right on condition broken to have the mortgage foreclosed and the property sold to satisfy his demand; the lien being in effect similar to that created by an ordinary judgment docketed in the judgment docket.

Venue—Failure to Move for Change Until Trial Waives Objection Suit Affecting Land was not in Proper County.

7.  Under Section 396, Or. L., requiring suits affecting land to be brought in the county where the land is situated, and Section 397, providing that where suit has not been commenced in the proper county, and the motion is not made for the purpose of delay, the court may change the place of trial, the objection that a suit affecting land was brought in a county other than that in which the land was situated is waived, where no motion to change the place of trial was made, and the objection was first urged on the trial, since the provision for change of venue applies to local suits as well as to those which are transitory.

Cancellation of Instruments—Ordinarily Remedy is in Personam.

8.  Ordinarily the equitable remedy awarded in a suit for the cancellation of an instrument affecting land operates *in personam*, by requiring the party to execute a conveyance, but under Section 414, Or. L., making the decree equivalent to a conveyance if the party fails to comply therewith, the decree is one *in rem*.

Appearance—Have Jurisdiction Over Suits Affecting Lands in Other Counties After Objection to Venue is Waived.

9.  After both parties have appeared in a suit affecting lands in another county, and have waived the objection that it is not brought in the proper county, the court has jurisdiction over the parties and the subject matter.

Cancellation of Instruments — Objection Warrantor was not Real Party in Interest in Suit to Cancel Mortgage not Sustained.

10.  In a suit to cancel a mortgage, an objection that plaintiff was not the real party in interest is not sustainable, where the evidence shows that plaintiff was the party to whom the land had been conveyed subject to the mortgage, and that she had conveyed it to another, warranting the title free and clear of all incumbrance, so that she would be the one required to pay the mortgage, since the

cancellation of the mortgage at the suit of the plaintiff would necessarily end all possibility of further litigation and fully protect defendant.

From Marion: GEO. G. BINGHAM, Judge.

AFFIRMED.

Department 1.

For appellant Will E. Purdy, *Will E. Purdy, in propria persona.*

For respondent there was a brief over the names of *Mr. Walter C. Winslow* and *Mr. P. J. Kuntz,* with an oral argument by *Mr. Kuntz.*

RAND, J.—This suit was brought in Marion County to obtain the cancellation of a mortgage of real property situated in Douglas County. The Circuit Court entered a decree canceling the mortgage, and from this decree the defendants have appealed.

Their first contention is that the court had no jurisdiction of the subject matter of the suit, for the reason that the suit was not brought in the county where the mortgaged land lies.

Under Section 396, Or. L., suits in equity "(1) for the partition of real property; (2) for the foreclosure of a lien or mortgage upon real property; (3) for the determination of an adverse claim, estate or interest in real property or the specific performance of an agreement in relation thereto," shall be commenced and tried in the county where the land or some part thereof is situated. "In all other cases the suit shall be commenced and tried in the county in which the defendants or either of them reside or may be found at the commencement of the suit."

If a suit for the cancellation of a mortgage of real property is a local one, then this suit should have

been commenced and tried in Douglas County where the mortgaged land is situated; while if it is a transitory suit, then it was not only proper, but necessary, for the suit to be commenced and tried in Marion County, because at the time of the commencement of the suit the defendant Purdy and the officers of the defendant corporation all resided and were found in Marion County. Under the provisions of the statute referred to the suit is transitory and not local unless the cancellation of this mortgage will operate or result in the determination of some adverse claim, estate or interest of the holder of the mortgage in or to the mortgaged property, as none of the other provisions requiring the suit to be commenced and tried in the county where the land or some part thereof lies, can have any application to the equitable relief of cancellation of a mortgage. Whether, by the cancellation of this mortgage, the decree determined or resulted in the determination of any adverse claim, estate or interest, the holders of the mortgage had in the lands mortgaged, depends upon the character and extent of the rights and interests that the holder of the mortgage in this state has in the mortgaged premises. And unless the rights and interests of the holder of a mortgage upon real property are tantamount to an "adverse claim," "estate" or "interest" in the mortgaged lands, within the meaning of those words as used in the statute, a suit for the cancellation of a mortgage is transitory and not local.

At common law, a mortgage was "an estate created by a conveyance, absolute in its form, but intended to secure the performance of some act, such as the payment of money and the like, by the grantor or some other person, and to become void if the act is performed agreeably to the terms prescribed at the time of making such conveyance," and was "there-

fore, an estate defeasible by the performance of a condition subsequent." Washburn on Real Property (5 ed.), Chap. 16, § 1. In the same section the author says:

"As ordinarily understood, a lien upon land does not imply an estate in it, but a mere right to have it, in some form, applied towards satisfying a claim upon it. The peculiarity of mortgages is that, while in some States they combine the character of lien and estate, in others they form a lien only upon the land."

In this state a mortgage upon real property does not combine the character of a lien and an estate in the lands mortgaged, but it creates nothing more than a lien or an encumbrance on the land as security for the payment of a debt or the fulfillment of some other obligation.

In the case of *Anderson* v. *Baxter,* 4 Or. 105, this court said:

"Formerly, a mortgage. of real property was regarded as a conveyance of the legal title, subject, of course, to be defeated by the performance of a condition, and this doctrine still prevails to some extent. Courts of equity, however, have always regarded a mortgage as a mere security of a debt, and the foreclosure thereof as a proceeding to satisfy the debt secured thereby; and Courts of law as well as Courts of equity, in many of the States, have taken the same view; that is, that a mortgage was a mere lien or pledge, and that the general title to the mortgaged property was in the mortgagor. In the language of one of the authorities, 'The mortgagee has neither a *jus in re* nor *ad rem,* but a specific lien, similar in character to a general lien created by a judgment upon the land of the judgment-debtor.' (3 Denio [N. Y.] 232.) However this may be, as a matter of strict law, I am satisfied that a suit to foreclose a mortgage is not for the determination of any right or claim to, or interest in real property, but a pro-

ceeding to have the mortgaged property adjudged to be sold to satisfy the debt secured thereby; at least this is in accordance with the express provisions of our statute. (Civ. Code, § 410.) In such a suit the title to the mortgaged premises is in nowise drawn in question. The adjudication is merely as to the fact of the execution of the mortgage, the amount due thereon, and the sale of the property to satisfy the debt secured. It is the mere collection of a debt charged upon specific property by resorting to the property as a means of satisfying it. If it were a suit to divest a party of title, or to establish some right regarding the title to real property, it would stand upon a different footing; but the mortgage being in equity only a chose in action, a suit to foreclose it is more analogous to an action upon a sealed instrument, and should be governed by the same rule of limitation."

Said Mr. Justice Lord in *Sellwood* v. *Gray,* 11 Or. 534, 537:

"In this state, a mortgage does not operate, as at common law, to vest in the mortgagee an estate upon condition, the breach of which works a forfeiture of the estate, and renders it absolute. It is, in fact, what the parties intended, and as equity treated it, a mere security for the repayment of the debt or obligation, and serves simply to create a lien or encumbrance upon the property. The title, both before and after condition broken, remains in the mortgagor until foreclosure and judicial sale. The mortgage works no change of ownership in the property. It is still the property of the mortgagor, in law and in equity; is liable for his debts; may be sold under execution, conveyed or devised; is subject to dower, or may be again mortgaged, as any other estate in land. Nor do any of the qualities or incidents of an estate in land attach in the mortgagee; he has but a lien upon the land as a security for repayment, and which cannot operate to affect the possession of the mortgagor without his consent, or to transfer his estate in the land, except after default, and by force of a

judicial sale under a decree of foreclosure. But before such proceedings are had, payment of the debt by the mortgagor will extinguish the lien and free the estate from the mortgage."

Said this court again in *Marx* v. *La Rocque,* 27 Or. 45, 47 (39 Pac. 401):

"It [the mortgage] vests no title or right to the possession in the grantee but simply creates a lien or encumbrance on the land. * * whatever may be the form of the instrument, if it was executed as security for a debt, it will be treated merely as a mortgage, and the title and right to possession will remain in the mortgagor until foreclosure and sale. (Citing authorities.) From this it necessarily follows that plaintiffs have no legal estate in or right to the possession of the land sought to be partitioned, and cannot maintain a suit for that purpose."

The doctrine announced in these cases has been followed by this court in the following cases: *Renshaw* v. *Taylor,* 7 Or. 315, 320; *Thompson* v. *Marshall,* 21 Or. 171, 176 (27 Pac. 957); *Adair* v. *Adair,* 22 Or. 115, 131 (29 Pac. 193); *Security Sav. & Trust Co.* v. *Loewenberg,* 38 Or. 159, 169 (62 Pac. 647); *Dekum* v. *Multnomah County,* 38 Or. 253, 256. (63 Pac. 496); *Kaston* v. *Storey,* 47 Or. 150, 152 (80 Pac. 217); *Noble* v. *Watkins,* 48 Or. 518, 520 (87 Pac. 771); *Kaiser* v. *Idleman,* 57 Or. 224, 233 (108 Pac. 193, 28 L. R. A. (N. S.) 169).

1, 2. Under these decisions a mortgage of real property in this state does not convey the title nor does it create an interest or an estate in the mortgaged property. It merely creates a lien or an encumbrance against the property as security for the payment of a debt or the fulfillment of an obligation, and becomes void on payment of the debt or the fulfillment of the obligation. Equity regards the debt as the principal thing, and the land as a mere incident

to it. The interest created by the mortgage in the mortgaged premises is of a personal nature, like that which the mortgagee has in the debt itself, and whatever the mortgage does with the land is auxiliary to enforcing payment of the debt: 2 Washburn on Real Property (5 ed.), § 511.

3, 4. Until foreclosure and sale the mortgage is a mere chose in action secured by a lien upon the land, which gives to the mortgagor no title or estate whatever to the mortgaged premises. The mortgagor has no interest in the mortgaged premises which he can sell or which can be sold separately from the debt itself, and the transfer of the mortgage, without a transfer of the debt intended to be secured thereby, is a mere nullity: *Trimm* v. *Marsh,* 54 N. Y. 599 (13 Am. Rep. 623). A mortgage given as security for the payment of a note may be transferred either by the indorsement of the note and the surrender of its possession or, if the note is payable to bearer, by the mere delivery thereof and the surrender of its possession, and this transfer of the note, without any formal transfer of the mortgage, transfers the mortgage: *Barringer* v. *Loder,* 47 Or. 223 (81 Pac. 778); *Hillman* v. *Young,* 64 Or. 73 (127 Pac. 793, 129 Pac. 124).

5. The full, legal and equitable ownership of the mortgaged premises remains in the mortgagor, and can be divested through or by means of the mortgage only by foreclosure and judicial sale.

6. The right conferred upon the mortgagee by the mortgage is the right, upon condition broken, to have the mortgage foreclosed and the mortgaged property sold to satisfy his demand. This is the only right the mortgagee can acquire through the mortgage other than the mortgagee may take all needful measures to protect his security, but nothing more. The

lien created by the mortgage is a specific lien and, although enforceable only by suit, in its effect upon the property mortgaged, is similar in character to that created by an ordinary judgment for the pay- ment of money, which, upon being docketed in the judgment docket, becomes, by force of the statute, a lien upon all of the real property of the judgment debtor within the county where the same is docketed, but creates no claim to or estate or interest in the land itself.

7. But, it is not necessary for us to decide whether a mortgagee in this state does acquire an adverse claim in or to the mortgaged premises within the meaning of the term "adverse claim" as used in the statute, for, however that may be, while a local suit, such as one affecting real property, must be brought in the county where the land is situated, as other- wise the true venue is not laid, yet the direction con- tained in Section 396, Or. L., is merely a statutory declaration of the rule which existed independently of statute, and by Section 397, Or. L., where the suit has not been commenced in the proper county and the motion is not made for the purpose of delay, and these facts appear from the affidavit of either party to the suit, the court, on motion of such party, may change the place of trial. In construing Sections 396 and 397, Or. L., Mr. Chief Justice Lord, in *Johnston* v. *Wadsworth*, 24 Or. 494 (34 Pac. 13), in a suit brought in Multnomah County for the specific per- formance of a contract affecting real property lo- cated in Jackson County, after pointing out that a suit for the specific performance of a contract pro- ceeds *in personam*, said:

"The relief sought by this suit is not to determine title, but to recover the price stipulated to be paid for the land. The decree is *in personam* and not

*in rem,* and it would seem, therefore, when the parties
are within its jurisdiction, a court of equity may make
its decree *in personam* for the specific performance
of a contract for the sale of land in another county,
notwithstanding Section 387.   (§ 396, Or. L.)

"However that may be, if the plaintiff brought his
suit in the wrong county the defendant waived this
objection under Section 388 (§ 397, Or. L.) by not
availing himself of the right to a change of venue to
the proper county.   We think, therefore, that it is too
late·to raise this objection after a suit has been tried
on its merits."

We think that this decision is decisive of the ob-
jection urged here, even if this suit is a local one.
It was within the legislative power to prescribe that
suits affecting title to real property should be brought
in the county where the land was situated and to pro-
vide that where a suit affecting land was not brought
in the county where the land lies, but was brought
in any other county in the state, the court, having
jurisdiction of the parties to the suit, should have
jurisdiction to hear and determine any matter af-
fecting the title to lands in another county, unless
objection to the power of the court was made before
answer, and to direct that unless such objection was
so made, the court to which the action was brought,
should have power to determine the matters affecting
the lands so involved.

8. We think that the provisions of Section 397, Or.
L., as held in *Johnston* v. *Wadsworth, supra,* applies
whether the suit affecting the land proceeds *in per-
sonam* or *in rem.*   Ordinarily, in the absence of stat-
ute, the equitable remedy awarded in a suit for the
cancellation of a deed or other instrument affecting
land, operates *in personam,* by requiring the party
to execute a conveyance, or other instrument releas-
ing and discharging the instrument sought to be can-

celed, and the decree is enforced by punishing the
party refusing or neglecting to comply therewith as
for a contempt; but, by the provisions of Section 414,
Or. L., where a decree requires a party to make a
conveyance, transfer, release or acquittance, and
such party fails to comply therewith, the decree is
deemed and taken to be equivalent to the making of
such conveyance, transfer, release or acquittance, and
in such case the decree operates directly against the
interest or title affected thereby, and is, therefore, a
decree *in rem*.

9. In this suit the court had jurisdiction of the
persons of the defendants. The defendants appeared
in the action and filed their answer, and the cause
was put at issue. A trial was had and upon the
trial this objection was urged for the first time. It
was, therefore, too late, as this objection, under the
statute, was then waived and the court had jurisdic-
tion to try and determine the cause, and to render a
decree in accordance with and having the effect given
to it by Section 414, Or. L. After the defendants had
waived the objection that the suit was not brought in
the county where the land or some part thereof is
situated, the Circuit Court of Marion County had
jurisdiction to hear and determine this suit and to
cancel the mortgage in question, under the principle
that "where the defendant in the original action is
liable to the plaintiff, either in consequence of con-
tract, or as trustee, or as the holder of a legal title
acquired by any species of *mala fides* practiced on
the plaintiff, the principles of equity give a court
jurisdiction, wherever the person may be found, and
the circumstance, that a question of title may be in-
volved in the inquiry, and may even constitute the
essential point on which the case depends, does not

107 Or.—6

seem sufficient to arrest that jurisdiction." Chief
Justice Marshall in *Massie* v. *Watts,* 10 U. S. (6
Cranch) 157 (3 L. Ed. 181, see, also, Rose's U. S.
Notes).

10. Defendant's next contention is that this suit
cannot be maintained because the plaintiff is not the
real party in interest. This objection is based upon
the fact that before the suit was commenced the plain-
tiff had conveyed the mortgaged premises to her sis-
ter. The objection was made, for the first time, at
the trial. The defendant neither moved against the
complaint nor demurred 'thereto; nor does the an-
swer contain any allegation that the plaintiff is not
the real party in interest. "If the complaint states
facts sufficient to constitute a cause of action, it can-
not be dismissed at the trial for irrelevancy or re-
dundancy in its allegations, nor for indefiniteness or
uncertainty which might have been corrected by mo-
tion, nor from misjoinder or duplicity, nor for defect
of parties, nor because plaintiff is not the real party
in interest, or has not legal capacity to sue." Ab-
bott's Trial Brief on the Pleadings (1891 ed.), § 691,
p. 583. By her deed of conveyance the plaintiff cove-
nanted with her sister that the premises were free
from all encumbrances and that she would warrant
and defend the same against the lawful claims of all
persons whomsoever. It is not necessary for the
plaintiff to prove ownership in order to establish
her cause of suit as by the covenants of her deed
she is the party who ultimately would have to pay the
mortgage if it were sustained. She, therefore, has
a substantial interest in this litigation.

"These remedies [reformation and cancellation]
may be obtained on behalf of either a legal or an
equitable interest, by either a legal or an equitable
owner." 1 Pomeroy's Equitable Remedies, § 4.

Mr. Justice WOLVERTON, speaking for this court in *Sturgis* v. *Baker,* 43 Or. 236, 241 (72 Pac. 744), says that the statute requiring every action to be prosecuted in the name of the real party in interest "was enacted for the benefit of a party defendant, to protect him from being again harassed for the same cause," and that if the defendant is not "cut off from any just offset or counterclaim against the demand, and a judgment in behalf of the party suing will fully protect him when discharged, then is his concern at an end. This is the test as to whether such a defense is properly interposed."

This rule was applied and followed in *Blaser* v. *Fleck,* 96 Or. 187 (189 Pac. 637), and in the cases there cited. The cancellation of this mortgage at the suit of plaintiff necessarily puts at an end all possibility of any further litigation seeking a cancellation of this mortgage. We therefore conclude that this objection is not well taken.

Defendants also contend that it was the duty of the court, under the evidence offered at the trial, to enter a decree sustaining the mortgage. It appears from the testimony that on September 14, 1920, the plaintiff was indebted to various parties in amounts greater than, at the time, she was able to pay; that, at that time, she was the owner of the 520 acres of land described in the complaint and also of various other tracts of land; that she consulted, in respect to her financial difficulties, with the defendant Purdy who was a real estate dealer; that he represented to her that if she would convey all of her property to him as trustee, he would so handle the property as to raise sufficient funds with which to pay her creditors and to save a part of the property for her; that, having confidence in his integrity, and believing that he had the ability to carry out his representa-

tions, and relying upon the same, without any other consideration than said representations, she conveyed all of her property to him as trustee.

On January 7, 1921, without any consideration therefor, he executed a deed conveying the 520-acre tract of land to the defendant corporation. At that time he was the president of the defendant corporation; his daughter was secretary; his wife was treasurer, and all of the officers and directors of the corporation, and, so far as the record discloses, all of the stockholders of the corporation, were members of his own family. The defendant corporation mortgaged the premises to the defendant Purdy to secure the payment of a note given by the corporation to Purdy for $1,800, payable one year after date, and, subject to said mortgage, by deed reconveyed the premises to the plaintiff. The deed contained a recital that the grantee assumed and agreed to pay said mortgage. This deed was placed of record by the defendants and, after it had been recorded, was mailed by the defendants to the plaintiff. The deed from Purdy to the corporation is dated January 7, 1921, and it purports to have been acknowledged on that day. The mortgage from the defendant corporation to Purdy was dated and acknowledged on February 3, 1921, and was recorded on February 8, 1921, while the deed of reconveyance from the corporation to Purdy was dated and acknowledged on January 3, 1921. Hence, on the face of the record as made by the defendants, the mortgage was executed one month subsequent to the day that the premises were reconveyed to the plaintiff and four days prior to the conveyance of the premises to the defendant corporation by Purdy. The deed to plaintiff from the defendant corporation contains full covenant of warranty except it recites that the prem-

ises conveyed are encumbered by mortgage which the grantee, by its terms, assumes and agrees to pay. The deed, therefore, contains covenants sufficient to pass any subsequently acquired title which might pass to the defendant corporation.

Plaintiff testified that the conveyance from Purdy to the corporation and the execution by the corporation to Purdy of the mortgage were made without any authorization by her and without her knowledge or consent, while the defendant Purdy testified that these conveyances were made with her full knowledge and approval.

The testimony in this cause was taken in open court. The learned judge who heard this testimony had the opportunity of seeing the witnesses, of observing their demeanor upon the stand and of judging their credibility. He found that the property was encumbered by this mortgage without plaintiff's knowledge or consent, and that the transaction was unauthorized and was fraudulent and void.

A careful consideration of the testimony convinces us that the trial judge was right in his conclusion and that these premises were conveyed by Purdy to the defendant corporation in order to enable Purdy, through the corporation, to obtain a mortgage upon plaintiff's land in fraud of her rights and in violation of Purdy's trust agreement.

For the reasons stated the decree appealed from will be affirmed.                                        AFFIRMED.

MCBRIDE, C. J., concurs.

BURNETT and HARRIS, JJ., concur in the result.