Argued March 22, Reversed July 16, 1929.

LEN W. GUILD *v.* R. A. WALLIS ET AL.

(279 Pac. 546.)

For appellant there was a brief over the name of *Mr. W. V. Cowan,* with oral arguments by *Mr. E. B. Tongue* and *Mr. T. J. Cleeton.*

For respondent The Federal Land Bank of Spokane there was a brief over the name of *Mr. R. J. Venables,* with an oral argument by *Mr. Frank Holmes.*

For respondents R. A. Wallis, Effie Wallis, H. D. Anderson, U. A. Anderson, C. M. Barnes and Dora Barnes there was a brief over the name of *Messrs. Hare, McAlear & Peters,* with an oral argument by *Mr. R. F. Peters.*

RAND, J.—The plaintiff, Len W. Guild, and his brother, J. J. Guild, were the owners in fee as tenants in common with a tract of land in Washington County, each owning an undivided one-half interest therein. While so owning the land, they voluntarily partitioned it among themselves and each conveyed to the other all his right, title and interest in the part which had been so allotted to him. The deed from plaintiff to his brother was a quitclaim deed, the granting words being "remise, release and forever quitclaim." The consideration expressed in the deed, together with the granting clause, omitting therefrom the description of the land conveyed, reads as follows:

"Know All Men by These Presents, that I, L. W. Guild, unmarried, in consideration of one dollar, to me paid by J. J. Guild, and the further consideration and agreement on the part of said J. J. Guild, his heirs and assigns, to keep open and in good order two certain ditches over and across the land this day conveyed to him by grantor herein, sufficient to carry off the water and enable the said L. W. Guild to properly drain the land this day conveyed to him by J. J. Guild which land adjoins the land herein conveyed, do hereby remise, release and forever quitclaim unto the said J. J. Guild and unto his heirs and assigns, all my right, title and interest in and to the following described parcel of real estate * * ."

The defendants were not parties to said deed but are the owners in severalty of different parcels of the land and between them own all of the tract which was thus conveyed by plaintiff to his said brother, they having subsequently acquired the same through conveyances from J. J. Guild. Plaintiff is the owner of the land of which he received a deed for an undivided one-half interest from his brother and for the

drainage of which his brother covenanted to keep open and in good order two certain ditches sufficient to carry off the water and enable him to properly drain the same. The defendants, the complaint alleges, have failed and neglected to keep, said ditches open and in good order and because of their said failure, it has caused the water to back up and flood plaintiff's land to the great loss and damage of plaintiff.

This suit was brought to recover damages for the injuries thus far sustained and for a mandatory injunction requiring the defendants to keep said ditches open and in good order as covenanted in the deed by J. J. Guild, and failing the issuance of such order, that plaintiff be permitted to go upon said land and clean out said ditches and to have the costs thereof impressed as a charge against defendants' lands. The defendants appeared and separately demurred to the complaint upon the ground that the complaint failed to state facts sufficient to constitute a cause of suit. The learned trial court sustained the demurrers to the complaint and from a decree dismissing the complaint, plaintiff has appealed.

In support of their demurrers, the defendants contend that the covenant contained in the acknowledgment of the consideration for which the deed was executed, as expressed in the deed itself, was a personal covenant and not a covenant running with the land and was binding upon the grantor only and not upon subsequent owners of the land who acquired title through him. They seem to base this contention upon the claim that a covenant running with the land must be inserted independently of the consideration and in a subsequent part of the deed; that a covenant running with the land cannot be created by a

quitclaim deed, which they assert is a deed of release only and not a deed of conveyance; that a court of equity will not grant a mandatory injunction requiring the performance of ordinary personal services; that plaintiff has a full, complete and adequate remedy at law, and the Federal Land Bank for itself claims that it was created by an Act of Congress (Federal Farm Loan Act, 39 Stat. 360 [12 U. S. C. A., § 641]), and is a governmental institution which was created for the purpose of selling bonds and loaning money to farmers and could not be bound to perform the covenant even though it became the subsequent owner of the land.

■■■ Any words in a writing under the hand, whether sealed or unsealed, of a person importing an agreement is a covenant and, while ordinarily quitclaim deeds do not contain covenants, yet if one is clearly expressed in that form of deed, there can be no reason why it should not be as enforceable in that form of deed as in any other form of deed. The covenant involved here concerned the land which the defendants have since acquired by mesne conveyances from J. J. Guild and formed a part of the consideration for which plaintiff conveyed an interest in the land to his brother. Since the promise to perform the covenant was a part of the consideration for which plaintiff parted with an interest in the land, the covenant was properly inserted in the consideration clause of the deed. On its face the covenant purports to bind not only J. J. Guild but also "his heirs and assigns," and by its very terms it is as binding upon all persons who have since acquired title to the land through J. J. Guild as it was upon J. J. Guild himself at the time he was the owner of it. This follows because all such persons are charged

with constructive notice of the quitclaim deed in question, it being one of the instruments making up their chain of title.

"Wherever a purchaser," says Mr. Pomeroy, "holds under a conveyance, and is obliged to make out his title through that deed, or through a series of prior deeds, the general rule is firmly established that he has constructive notice of every matter connected with or affecting the estate which appears, either by description of parties, by recital, by reference, or otherwise, on the face of any deed which forms an essential link in the chain of instruments through which he must derive his title." 2 Pomeroy's Equity Jurisprudence (3 ed.), § 626. In the following sections the same author says that the notice resulting from recitals contained in title deeds is absolute in its nature except as to matters which are wholly foreign to the nature and objects of the instrument or as to matters which are purely collateral and dealing with another subject matter. The reason for the rule that the notice of such recitals is absolute, he states, is that without such a rule "there could be no security in land ownership." The rule applies, he says, to recitals in both recorded and unrecorded title deeds. To the same effect, see 2 Devlin on Deeds (3 ed.), Section 1000, where the author says that "the principle of equity is well established that a purchaser of land is chargeable with notice, by implication, of every fact affecting the title which would be discovered by an examination of the deeds, or other muniments of title of his vendor, and of every fact as to which the purchaser, with reasonable prudence or diligence, ought to become acquainted."

■ The contention that the covenant in question is a personal covenant and not one which runs with the

land would be of no importance even if it were true. "The test," said CARTWRIGHT, J., in *Purvis* v. *Shuman*, 273 Ill. 286 (112 N. E. 679, 682, Ann. Cas. 1918D, 1175, L. R. A. 1917A, 121), "whether a covenant runs with the land or is merely personal is whether the covenant concerns the thing granted and the occupation or enjoyment of it, or is a collateral and personal covenant not immediately concerning the thing granted. If a covenant concerns the land and the enjoyment of it, its benefit or obligation passes with the ownership, but to have that effect the covenant must respect the thing granted or demised, and the act to be done or permitted must concern the land or estate conveyed." See, also, 1 Williston on Contracts, Section 406, where the author accepts the statement just quoted as the true test.

It seems to us that the covenant in question meets the test in every particular and that it is one running with the land, but whether the covenant is or is not one which in law runs with the land is of no importance. As said by BIGELOW, J., in *Whitney* v. *Union Railway*, 11 Gray, 359, 364 (71 Am. Dec. 715): "The precise form or nature of the covenant or agreement is quite immaterial. It is not essential that it should run with the land. A personal covenant or agreement will be held valid and binding in equity on a purchaser taking the estate with notice. It is not binding on him merely because he stands as an assignee of the party who made the agreement, but because he has taken the estate with notice of a valid agreement concerning it, which he cannot equitably refuse to perform."

"On the same principle," says Mr. Pomeroy, "if the owner of land enters into a covenant concerning the land, concerning its use, subjecting it to ease-

ments or personal servitudes, and the like, and the land is afterwards conveyed or sold to one who has notice of the covenant, the grantee or purchaser will take the premises bound by the covenant, and will be compelled in equity either to specifically execute it, or will be restrained from violating it; and it makes no difference whatever, with respect to this liability in equity, whether the covenant is or is not one which in law 'runs with the land.' '' 2 Pomeroy's Equity Jurisprudence (3 ed.), § 689.

■ ■ We find no merit in any of the other contentions urged by the defendants. The contention that the quitclaim deed in question conveyed no title to J. J. Guild is wholly unfounded. Before the execution and delivery of this deed, plaintiff and J. J. Guild were each the owners of an undivided one-half interest in the property described in the deed and, upon the execution and delivery of the deed, J. J. Guild became the sole owner of said premises. The effect of the deed, therefore, was to convey to him an undivided one-half interest in the premises which, until he received the deed, he did not own. Nor is there any merit in the contention that this deed was a mere release and did not operate to convey title. Under Section 9846, Or. L., a quitclaim deed passes all the title or estate which the grantor at the time of its execution has in the premises, and does it as effectually as would a warranty deed: 1 Devlin on Deeds, § 27.

■ ■ The contention that a court of equity ought not to grant a mandatory injunction 'which requires a party to perform ordinary personal services, whether well taken or not, has no bearing upon the question of the sufficiency of the complaint. If the prayer of the complaint, in an equity suit, contains a

request for some specific relief to which the plaintiff may not be entitled, the complaint will not be affected thereby if it states facts entitling plaintiff to some other equitable relief and contains a prayer for general relief. Courts of equity grant such relief as a party is found to be equitably entitled to whether specifically prayed for or not under the prayer for general relief. This complaint prays for both special and general relief.

■ The contention that the plaintiff has an adequate remedy at law is not well founded. Courts of equity have always entertained jurisdiction to specifically enforce covenants of the nature of the one in question here, or restrain the violation of them.

■ The contention of the Federal Land Bank that it was created by an act of Congress for the purpose of loaning money to farmers and derives its authority wholly from the act creating it does not, upon its acquiring the ownership of land, in any way affect its liability as such owner for failure to perform covenants which are binding upon the owner of the land because of his ownership thereof. Whenever the Federal Land Bank, in the performance of the duties entrusted to it by Congress, acquires title to land subject to a covenant binding on the owner of the land, performance of the covenant is as binding upon the Federal Land Bank as upon any other owner of the land and Congress has no power to relieve it from such liability.

In *Ford* v. *Oregon Electric Ry. Co.*, 60 Or. 278 (117 Pac. 809, Ann. Cas. 1914A, 280, 36 L. R. A. (N. S.) 358), this court, speaking through Mr Justice BEAN, quite fully discussed the law of what constitutes covenants running with the land and quoted copiously from textwriters and from the decisions of

courts and cited numerous authorities bearing upon that question, which renders a further discussion here unnecessary. One of the principles of law which was quoted with approval in that case was: "A covenant which is beneficial to or binding on the owner as owner, and on or to no other person, runs with the land." This quotation was taken from *Aikin* v. *Albany V. & C. R. R. Co.*, 26 Barb. (N. Y.) 289, 293. Applying this principle to the instant case, this covenant is beneficial to plaintiff because he is the owner of the land to be benefited by its performance, an undivided one-half interest of which was conveyed to him by his brother at the time he made the conveyance in question. When he ceases to be the owner, the benefit to be derived from its enforcement will pass to whoever will succeed him in the ownership thereof. The covenant also was binding only on J. J. Guild so long as he remained the owner of the land, an undivided one-half interest of which was conveyed to him by the deed in question. When he sold and conveyed the land to others, his obligation to keep the ditches open became binding upon those who acquired the ownership from him. The rights and duties of the parties, therefore, depend upon the ownership of the two tracts of land and can affect or bind only such persons as are the owners of the lands referred to. Upon acquiring an interest in the land, if the Federal Land Bank acquired the interest alleged in the complaint, then because of its ownership of the land it became charged with the duty of keeping these ditches open, according to the terms of the covenant, and will continue to be so charged so long as its ownership continues unless sooner released or discharged of that duty by Len W. Guild, his heirs or assigns. So long as the plaintiff

remains the owner of the land he can enforce the covenant.

We hold that this was a covenant running with the land and is enforceable by Len W. Guild against the owners of the servient estate created by the deed he gave his brother, and that the complaint does state facts sufficient to constitute a cause of suit and that if the facts alleged are established upon the trial, plaintiff will be entitled to equitable relief. The decree, therefore, sustaining the demurrers to the complaint and dismissing the suit must be reversed and the cause will be remanded with directions to overrule the demurrers.

REVERSED AND REMANDED, WITH DIRECTIONS.

McBRIDE, BEAN and ROSSMAN, JJ., concur.