Argued January 4; modified January 29; supplemental opinion
February 19; rehearing denied April 9, 1935

# GUILD *v.* WALLIS ET AL.

(40 P. (2d) 737, 41 P. (2d) 1119, 42 P. (2d) 916)

*E. B. Tongue,* of Hillsboro (T. J. Cleeton, of Portland, on the brief), for appellant.

*R. Frank Peters,* of Hillsboro (Hare, McAlear & Peters, of Hillsboro, on the brief), for respondents.

BEAN, J. The covenant in the deed reads as follows:

"in consideration of one dollar, to me paid by J. J. Guild, and the further consideration and agreement on the part of said J. J. Guild, his heirs and assigns, to keep open and in good order two certain ditches over and across the land this day conveyed to him by grantor herein, sufficient to carry off the water and enable the said L. W. Guild to properly drain the land this day conveyed to him by J. J. Guild which land adjoins the land herein conveyed, * * *."

The Guild lands originally consisted of three tracts, named in the record as tract A, tract B and tract C. On March 1, 1898, J. J. Guild and Len W. Guild obtained title to the three tracts and continued to own the land from that date jointly until August 18, 1904, when they partitioned the original tracts between themselves, Len W. Guild deeding to J. J. Guild the tracts designated as B and C, which deed contained the covenant mentioned, and J. J. Guild deeding to plaintiff, Len W. Guild, the tract designated as A.

On the south of the Guild land there is a tract designated as D. One M. C. Collier acquired this land about the year 1884. In 1913, by mesne conveyances, Bruce Schulmerich obtained title to tract D. On January 29, 1919, Bruce Schulmerich obtained title to tract C. On December 31, 1919, Bruce Schulmerich and wife conveyed tracts C and D to A. S. Ellis. There is a ditch running southerly through a portion of plaintiff's land, thence southerly through tracts C and D to its outlet in the Tualatin river. On the line between tracts D and

C that ditch connects with another ditch on the west, which extends southerly over a portion of plaintiff's land; thence southerly between tracts B and C to the southeast corner of tract B; thence easterly along the line between tracts C and D to the junction of the other ditch just mentioned. Originally, there was a natural waterway extending easterly approximately along the line dividing tracts C and D; thence southeasterly extending from approximately the line between C and D to the Tualatin river.

These ditches have been dug so long that it was impossible, at the trial, for either party to establish who originally constructed the ditches. The ditches have been straigtened and do not follow the old waterway. That part of the ditch between the line dividing tracts C and D and the Tualatin river, which was referred to as the "outfall" ditch, together with the ditch which forms the dividing line between tract D on the south and tracts B and C on the north, has been treated and considered as a partnership ditch by the owners of tracts B and C on the north and the owner of tract D, and always has been kept open, worked and maintained by George Guild, and his successors, and Herman Collier, and his successors and predecessors, as a partnership ditch.

At the time of the execution of the deed in question by Len W. Guild to J. J. Guild, Herman Collier was still the owner of the land designated as tract D. As long as Collier and his predecessors owned only tract D, they, in conjunction with the owners of tracts A, B and C, continued to maintain and keep open said ditches, as partnership ditches, to the Tualatin river. After Collier became the owner of tract C, then owning tracts C and D, he and his successor, Schulmerich, assumed the entire burden of keeping open the entire ditch from

where it leaves tract A, at the northeast corner of tract B, to the Tualatin river.

On plaintiff's land, tract A, there are about ten acres of beaver dam land. There is a larger area of beaver dam land on tract B. The elevation of the beaver dam land on tract A, on certain portions thereof, is lower than the elevation of the beaver dam land on tract B. The water, therefore, goes off tract B earlier than it does off tract A. Therefore, the ditches that would drain tract B would not necessarily drain tract A. To make tract A available for the most valuable crops particularly adapted to beaver dam land, it is essential that tract A be properly drained. Both Len W. Guild and J. J. Guild recognized this fact at the time of the partition, so, in making the division J. J. Guild was given a much larger area of beaver dam land and more valuable land than Len W. Guild acquired, and as a consideration J. J. Guild assumed the burden of keeping open those two certain ditches sufficient to carry off the water and enable the said Len W. Guild to properly drain tract A.

When Bruce Schulmerich became the owner of the land described as tracts C and D, he undertook, in a businesslike manner, to clean out the ditches. He first had a grade established. This survey began at the river. At the point of junction, the grade was established at 8.2′, and running thence along tracts C and D, and B and C, the grade was established at a depth in some places of over 12′. He dug both ditches down to grade some time during the year 1919 with the intention of placing tile therein and covering it up. Consequently the sides of the ditches were dug down almost perpendicular. Schulmerich sold out on December 31, 1919, and at that time no tile had been put into the ditch, except approximately one thousand feet of 14″ tile in the ditch running

just south of the section line dividing sections 4 and 9. The soil where the ditches ran between tracts B and C, and C and D, is light and silty, and the ditches were not dug with sufficient slope for open ditches. During the cold, freezing weather of 1922, the soil froze and on thawing the banks immediately caved in. The testimony shows that at places in the ditches it filled up to a depth of approximately nine feet, and, at the junction where the grade was 8.2' the ditch was filled up at the time of the trial so it was only approximately 2' or 2½' deep. At places the ditch was almost completely filled, and each individual who owned tract C, with the exception of Rice, who owned the land from September 27, 1920, to October 24, 1922, and who, during his ownership, assisted by Barnes, cleaned out the ditches subsequent to Schulmerich, absolutely refused to keep open the ditches, so as to enable plaintiff to drain his land in the manner provided in said covenant.

Plaintiff was unable to farm or crop a large portion of his beaver dam land so as to get the full benefit of it during the years complained of in his amended complaint, and thereby seeks to recover, along with the injunctive relief, damages for the loss of the use and occupation of his beaver dam land for the years 1924, 1925 and 1926. Later an amended complaint was filed, wherein, in addition to the injunctive relief sought, plaintiff prayed for damages for the additional year of 1927. The appearing defendants each filed answers to the last amended complaint as drawn. The plaintiff filed his replies thereto. The issues were made up for the years mentioned and the case was tried, as far as the damages were concerned, for each of said years. After the evidence was taken, Judge Bagley made a personal investigation of the premises, and on April 28, 1933, filed his findings of fact and conclusions of law

and entered his decree herein, decreeing, among other things, as follows:

"1. That the defendants had failed to comply with and perform all of the covenants in said deed.

2. That the damage to the plaintiff was due to the failure and neglect of the defendants to comply with the covenants of said deed by keeping said ditch open between the Northeast corner of tract B and the point where said ditch forms its junction with the other ditch at or near the line dividing tracts C and D.

3. That the damages were limited to the years 1924, 1925 and 1926, excluding the year 1927.

4. That the liability of the defendants for damages was several and not joint.

5. That there was no obligation upon the part of the defendants to keep open that portion of the ditch designated as the 'outfall ditch', or that portion between the Tualatin river and where the ditch intersects the dividing line between tracts C and D.

6. That the liens of the mortgages of the defendant, The Federal Land Bank of Spokane, were superior to the claim for damages decreed to the plaintiff.

7. That the total damages awarded plaintiff amounted only to the sum of $900.00."

Plaintiff assigns as error that portion of the decree rendered wherein the court decreed that plaintiff was not entitled to recover damages covering the year 1927. As stated, the original complaint did not cover damages for the year 1927, but the amended complaint did. The lower court sustained a demurrer to the amended complaint upon the ground that the covenant in the deed was invalid, and this court reversed the lower court and sustained the amended complaint. See *Guild v. Wallis,* 130 Or. 148 (279 P. 546). Thereafter, the answering defendants, Barnes, Wallis and Anderson, filed separate answers which denied the allegations in reference to the damage for the year 1927, as well as for the

other years. No contention was made at any time as to the right to maintain an action for damages for that year. Replies were filed to these separate answers. Issues were properly made upon the question of damages for that year. The case was tried on the issue of damage for the year 1927. No objection was made by any of defendants to any of the testimony on account of the allegations of the complaint, praying for damages for that year. None of defendants or defendants' counsel challenged the right to damages for the year 1927 other than their objections to the testimony for all the years. The trial court allowed damages for all of the years except the year 1927, and denied the damages for that year on the ground, as we understand, that the amended complaint did not sustain damages for the year 1927, and that the only way damages for that year could have been considered would have been by filing a supplemental complaint.

In *Jennings v. Jennings,* 48 Or. 69, at page 72, et seq. (85 P. 65), it is stated, in effect, that as a general rule facts occurring after the filing of the original bill should be presented, if proper at all, by supplemental bill and cannot be introduced by amendment, citing 16 Cyc. 340. But this rule seems to be subject to the exception that if no answer has been filed at the time leave is granted, and the amendment is made, it is proper to allow matters, arising after the original bill was filed, to be added by way of amendment. Citing Story, Equity (9th Ed.) § 885; 1 Daniel, Ch. Pl. & Pr. *407.

Defendants contend that the refusal to allow damages for the year 1927 was proper, mainly for the reason that where a party desires to present matter arising after the filing of the original complaint the same must be brought in by filing a supplemental complaint, citing *Walker v. Fireman's Fund Ins. Co.,* 114 Or. 545,

573 (234 P. 542) and kindred cases. In that case the court first held that the admission of the testimony was error, which would necessitate a retrial of the case. Then, referring to the question of supplemental complaint, the opinion states: "The court erred in permitting the complaint to be amended on the trial so as to include a count for attorneys' fees." We do not understand that the case was reversed on that account, but, as it was necessary to be sent back for a retrial, the court suggested that plaintiff might apply to the trial court for leave to file a supplemental pleading. In *Johnson v. Prudential Life Ins. Co.*, 120 Or. 353, 358 (252 P. 556), a similar case, no objection was made to allowing the complaint to be amended so as to include the allegation of attorneys' fees. It was held: "That allegation should have been introduced by supplemental plea, but inasmuch as that question was not raised in the circuit court it will be ignored here. It is a matter purely of form, not of substance: *Walker v. Fireman's Fund Ins. Co.*, 114 Or. 545, 573 (234 P. 542)."

■ We think, as the amendment added no different cause of action, but merely enlarged the complaint for damages and did not change the proof to a great extent, and the defendants not having objected to the matter contained in the amended complaint or the testimony introduced in support thereof, and as defendants were not embarrassed or injured in any way by the method of making the amendment or presenting the issue relating to damages for the year 1927, that the amended complaint is sufficient to support damages, as shown by the testimony for the year 1927. The same amount of damages should be allowed for the year 1927 as was allowed for the other years, namely $300.

■■ Appellant next contends that the court erred in limiting plaintiff's damage to the sum of $900 for the

three years. The testimony of the witnesses as to the rental value of the use and occupation of the beaver dam land during the years mentioned, ranged from $125 to $150 per acre. This value is based upon the use of the land for the purpose of raising onions, which is shown to be the most profitable crop. On account of the poor drainage of the land plaintiff was unable to plant it to onions at the proper season, which is shown to be from the last of March up to the 15th of April, and not later than the first of May. Plaintiff planted onions two seasons and they drowned out; later in the season, he planted the land to other crops, such as carrots, beets and other vegetables. He pastured five or six acres and raised hay and grain on about six acres. The evidence shows that when the ditches were in good state of repair, plaintiff did not use more than three and one-half or four acres of his land for raising onions, while he testified he intended to use most all of the land. The testimony indicates that the raising of onions upon the land requires more care and labor than raising other vegetables. The price obtained for the crops during the several years is not given in the testimony. In order for plaintiff to increase the area of his onion land it appears to be necessary for him to prepare the land by tiling it. Evidently he would not have been able to prepare all the land so as to plant onions during that time, but in the ordinary way might have increased it gradually. It would also ordinarily depend upon his financial ability to purchase tiling and construct ditches and lay the same. The question of the amount of damages sustained by plaintiff depends upon various conditions. The learned trial judge examined the premises in question and no doubt was familiar with the conditions prevailing in that county and was in a better position to estimate the damages than this court is, and his

findings are entitled to great weight. In any event the amount of damages is an estimate, and we think that the sum of $1,200 is a fair compensation for plaintiff for damages caused by reason of the failure of defendants to properly clean the ditch and comply with the terms of the covenant.

■ Plaintiff asserts that the circuit court erred in allocating the amount of judgment among the various defendants. It is plaintiff's contention that the covenant covered every foot of land in tracts B and C in equal proportions and that the judgment should be joint against every part and parcel of those tracts, as burdened with the obligation of keeping open those ditches, and no part of either tract is burdened any more or any less than any other part or parcel of said tracts. The amount of damages caused by each defendant separately, from the nature of the case, cannot be segregated. This is not a suit to collect for the expenses of keeping the ditches in condition. The rule would be otherwise where a covenant running with the land is divisible in its nature if the entire interest in different parcels of land passes by assignment to separate individuals; in such case the covenant will attach upon each parcel pro tanto: *Astor v. Miller,* 2 Paige (N. Y.) 68. For instance, supposing a covenant providing that the grantee shall contribute one dollar per acre of land conveyed for the maintenance of an irrigation ditch over and across the same, in order to irrigate the grantor's land, runs with the land, and the granted land should be conveyed in separate tracts to separate individuals, then it would be easy to apportion the damages, if any, caused by the breach of the covenant to the different owners of the tracts. The testimony provides no basis for segregating the damages in the instant case.

■ Plaintiff contends that the court erred in holding that the "outfall" ditch or that part of the ditch on tract D from the line between tracts C and D and the Tualatin river, is not covered by the covenant and that the owners of tracts B and C are not required to keep that portion thereof open. This necessitates a construction of the description contained in the covenant, which is to keep open and in good order two certain ditches "over and across" the land conveyed to J. J. Guild, which were tracts B and C, sufficient to carry off the water and to enable L. W. Guild to properly drain the land conveyed. It will be noticed that the covenant does not provide for the covenantors to drain the land of Len W. Guild, but to keep the ditches open so as to enable him to do that. The term "over and across" certain land is so often used in describing a right of way for a road or right of way for an irrigation ditch that it seems plain that the parties, in framing the covenant, intended that the grantees of tracts B and C should keep these ditches open where they extend over those tracts. It would be a strained construction to hold that the owner of tracts B and C should be required to keep open the ditches on tract A, which is plaintiff's land, and it would be only one step removed, if this should be required, from requiring such owners to keep the ditch open not only over and across tracts B and C, but over tract D, which is beyond their land. Giving the covenant the fair construction which we think was intended by the parties at the time the same was drafted, we think the owners of tracts B and C are not required to keep the ditch open on tract D. There is only one ditch on tract D. The two ditches mentioned do not extend onto tract D, only as combined. The fact that the different owners of the land, in a neighborly way, have cleaned the ditches on a different basis than required

by the covenant, would not change the terms of the covenant. In other words, we do not deem the covenant ambiguous. The description of the ditches in the findings of fact and decree of the trial court is approved.

■ Plaintiff contends that any judgment for damages to plaintiff's land, for failure to comply with the terms of the covenant, relates back to the date of the covenant and is a lien upon the land from that date, and that this is in the nature of a judgment in rem. With this contention we are unable to agree. Upon this interesting question counsel on neither side appear to have been able to cite any authority. *Fresno Canal Co. v. Rowell*, 80 Cal. 114 (22 P. 53, 13 Am. St. Rep. 112) is cited as being somewhat analogous to the present case, but the covenant there mentioned was a different kind. While the covenant runs with the land and is a burden upon it, the liability for damages on account of a breach of the covenant is personal. In 2 Tiffany on Real Property (2d Ed.) § 388, 1401, it is said:

"Covenants the benefit or burden of which may thus pass to subsequent owners of the land are said to 'run with the land.' Rights created by such covenants in favor of or against transferees of the land are strictly *in personam,* and not *in rem;* but as incidents of the land, following it into the hands of subsequent owners, they are somewhat similar in effect to proprietary rights in another's land     *     *     *."

■ A judgment in rem creates no personal liability but operates only on the property which is the subject of litigation: 34 C. J. 1174, § 1663; *Quarl v. Abbett,* 102 Ind. 233 (1 N. E. 476, 52 Am. Rep. 662); *English v. Jenks,* 54 Mont. 295 (169 P. 727).

■■ As a result of plaintiff's theory he contends that the liens of the Federal Land Bank mortgages, executed subsequent to the date of the execution of the

deed containing the covenant, are inferior to the lien of plaintiff's judgment, and plaintiff further contends that there was error in refusing to allow plaintiff to recover his costs from the Federal Land Bank of Spokane. These two assignments of error are merged with the one last considered, to quite an extent. The Federal Land Bank of Spokane did not have an interest in the land involved in this case and cannot be held to respond in damages. It is well settled in this state that a mortgagee of a real estate mortgage has no title to the land mortgaged but only a lien upon the same for payment of the debt secured. There are cited in the brief of the defendant Federal Land Bank of Spokane the following cases: *Guild v. Wallis,* supra; *Sellwood v. Gray,* 11 Or. 534 (5 P. 196); *Casner v. Hoskins,* 64 Or. 254 (128 P. 841, 130 P. 55); *Aya v. Morson,* 90 Or. 647 (178 P. 207); *Schleef v. Purdy,* 107 Or. 71 (214 P. 137).

■ A grantee of an estate is not liable for breaches of covenants running with the land, which are committed by those preceding him in the enjoyment of the estate: 7 R. C. L. 1124, § 38. If the judgment relates back to the date of the covenant, it would seem to run counter to this rule.

■ Plaintiff had the right to enforce the covenant and compel defendants in possession of the land, burdened with the covenant, to perform the same and was not compelled to wait until the damages were a considerable amount so as to make the priority of the mortgage a very material question. We concur in the ruling of the trial court in this respect.

The decree of the lower court will be modified as indicated above, and affirmed as modified. Plaintiff will recover costs and disbursements against each and all of the defendants except the Federal Land Bank of Spokane.

Supplemental opinion filed February 19, 1935

## SUPPLEMENTAL OPINION
### (41 P. (2d) 1119)

BEAN, J. In our former opinion we held that the amended complaint is sufficient to support plaintiff's damages, as shown by the testimony, for the year 1927, and awarded the same amount of damages for that year as was allowed for the years of 1924, 1925 and 1926 against the same defendants.

It having been called to the attention of the court that H. D. Anderson and U. A. Anderson, his wife, sold and conveyed their interest in the land involved by deed dated September 22, 1926, to one Reedy, and therefore were not liable for the damages for a noncompliance with the covenant involved during the year 1927; our former opinion will be changed so as to relieve the Andersons from the judgment for $300 damages for the year 1927. The judgment for damages for that year will stand in favor of plaintiff and against defendants R. A. Wallis, Effie Wallis, C. M. Barnes and Dora Barnes and each of them.

No costs or disbursements will be allowed in favor of or against the Federal Land Bank of Spokane.

---

Petition for rehearing denied April 9, 1935

## ON PETITION FOR REHEARING
### (42 P. (2d) 916)

BEAN, J. Plaintiff filed a petition for rehearing, claiming that the damages awarded in this case should be $4,640. The testimony, which we have carefully considered, does not warrant us in changing the findings of the trial court as to the damages to this land, taking

in the whole farm, without describing each part separately, as fixed by the trial court for a year, viz, $300.

The damages were not shown to be any different for 1927 than for the three previous years, and, therefore, we allowed the same amount for that year as for the former years. The claim was based upon testimony that the rental value of the beaver dam land was about $100 per acre. Much of this land was used for other crops than onions; some was used for hay and grain; some was used for vegetables other than onions, and some for pasture, and we find no testimony that shows the difference in the value of such crops and the value of a crop of onions. It is assumed that the crop of onions is more valuable, quite likely, but how much more, or what the difference is, is not shown. Neither did we understand the testimony of plaintiff that all this beaver dam land was ready for the planting of onions in 1923. On the other hand, he stated that one never gets through tiling the land, and, from all the circumstances, we then concluded that, under favorable circumstances, he would have increased the area of onion land gradually. Taking all the testimony, up one side and down the other, we think a fair amount of compensatory damages was awarded.

The petition for rehearing, therefore, is denied.