Argued September 8, affirmed September 28, 1960

# KERNAN LIVESTOCK FARM, INC. *v.* MULT-NOMAH COUNTY ET AL

355 P. 2d 719

*Philip A. Levin,* Portland, argued the cause for appellant. On the briefs were Donald C. Walker and Jachetta and Lonergan, Portland.

*Charles Peterson,* Assistant Attorney General, Portland, argued the cause for respondents. With him on the brief were Charles E. Raymond, District Attorney, and Willis A. West, Chief Civil Deputy District Attorney, Portland, for respondent Multnomah County; Robert Y. Thornton, Attorney General, and L. I. Lindas, Assistant Attorney General and Chief Counsel for Oregon State Highway Commission, Salem, for respondent State of Oregon.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and KING, Justices.

GOODWIN, J.

This in an appeal by Kernan Livestock Farm, Inc., from a judgment entered for the defendants Multnomah County and the State Highway Commission following an order sustaining the defendants' demurrers to the complaint.

The plaintiff landowner is a successor in interest of Peninsula Industrial Company, a corporation. In

1915, Peninsula Industrial Company conveyed to Multnomah County a strip of land 80 feet wide which is particularly described in the deed by metes and bounds. The land conveyed, except for minor discrepancies in legal description which were corrected by a further deed in 1926, is the present route of Denver Avenue between Columbia Slough and Oregon Slough. Denver Avenue is now, and since 1937 has been, a part of the Oregon State Highway system.

The original conveyance in 1915 granted the land to Multnomah County for road purposes, and set forth certain conditions subsequent which we quote in full as they determine the rights of the parties:

"*　*　*　*　*

"(a) That the said Multnomah County shall within three (3) Years from the date of this conveyance construct or cause to be constructed and thereafter maintained upon that part of the tract of land herein described as Parcel B, which is north of the north bank of Columbia Slough, a fill and embankment which shall as far as possible duplicate the fill and embankment to be constructed by said Multnomah County upon Parcel A as described herein the west side line of the crown of said Fill or embankment to coincide substantially with the west side line of said Parcel B and shall within said period provide and thereafter maintain a Public highway over said Parcel B which shall be reasonably sufficient for the accommodation of Public travel thereover and if sufficient funds shall be available out of the proceeds of the so-called interstate bridge bonds of Multnomah County to pave said Highway in substantially the same manner as the highway to be constructed over the said Parcel A herein described shall be paved then and within said period above prescribed said Multnomah County shall likewise pave the said highway to be constructed over the said Parcel B as herein

described which pavement shall thereafter be maintained in the manner provided by law.

"(b) That the said Multnomah County shall construct of earth or other material approaches at a three per cent (3%) grade at two (2) different points leading over and across any highway, fill or structure placed upon each of the parcels hereby conveyed the location of said crossings to be designated by the grantor herein.

"(c) That no toll shall ever be collected by the said Multnomah county for any travel over any highway constructed over Parcel B as herein described; PROVIDED that this clause shall not be construed as a limitation on the right of the grantee or its successors to impose a license tax on public carriers or to impose a franchise or other tax on Public carriers.
"*    *    *    *    *."

In 1915 and 1916 the Interstate Bridge Commission constructed a highway upon a fill over the strip in question together with a similar highway upon a fill which is now Union Avenue.

In 1917 there were created two drainage districts, known as Peninsula Drainage District No. 1 and Peninsula Drainage District No. 2. The Denver Avenue fill was adopted as the boundary between the two drainage districts. Flood and drainage levees were later constructed around the perimeter of the two districts and were tied in with the Denver Avenue fill at the northern and southern boundaries of the districts.

In 1926 the correction deed mentioned above was delivered and recorded. It incorporated by reference all of the terms and conditions of the 1915 deed.

In 1942 the State Highway Commission consented to the construction of an underpass to give access to

Vanport on the west side of Denver Avenue for traffic moving in a northerly direction from Portland. The Vanport emergency housing project eventually became a city of substantial population. The underpass was constructed by a private contractor with federal funds as part of a wartime federal housing project. The plans and specifications for the underpass were prepared by the State Highway Commission. The breach in the Denver Avenue fill was made with the consent and active participation of the Highway Commission.

On Memorial Day, 1948, the floodwaters of the Columbia River broke through a railroad fill to the west of Denver Avenue and flowed across Vanport in an easterly direction to the above-mentioned underpass. The floodwaters flowed through the Denver Avenue fill at the site of the underpass and surged against a ring dike which had been built by army engineers. The ring dike burst. The waters then overflowed East Vanport and finally broke through the Union Avenue fill and flooded the lands of the plaintiff which lie in the eastern portion of Peninsula Drainage District No. 2.

The plaintiff commenced an action for damages against the defendants by a complaint which described the 1915 deed as creating a contractual duty on the part of the defendants to maintain the Denver Avenue fill as a flood-control dike. The plaintiff contended that the Highway Commission breached this duty when it permitted the underpass to be constructed.

The defendants challenged the complaint by demurrer. The only question before this court is whether the quoted conditions subsequent created covenants running with the land under which the plaintiff could impose liability for damages arising out of an alleged breach of covenant.

■ This opinion will not be extended by a discussion of the interesting question whether a breach of a condition subsequent would, if proven, give rise to liability for consequential damages. That question is not before the court because the conditions contained in the original deed did not bind Multnomah County and its successors in interest to maintain flood-control dikes in any event.

A careful reading of the conditions of the deed will reveal that the grantee was bound to construct a fill and a highway upon it. There is no mention of any duty to maintain a flood-control dike. For all that appears in the deed the Denver Avenue fill could have been constructed of either porous material or water repellent material, or any combination of the two.

■ When an instrument is relied upon as the foundation of a cause of action, and is set forth in full in a complaint, it prevails over the pleading of its purported legal effect. *Kohler v. Gilbert et ux,* 216 Or 483, 339 P2d 1102; *Kelley et ux v. Mallory et ux,* 202 Or 690, 277 P2d 767; and cases cited therein.

Other conditions in the lengthy deed spell out in detail the rights which were reserved by the grantor itself to make cuts in the fill for road crossings, railroad crossings and water crossings at the discretion of the grantor. True, these reservations were rights of the grantor solely and the defendants can claim nothing thereby except that the presence of the reservations in the deed belies the contention now made by the plaintiff that there was an expressed intention to maintain the Denver Avenue fill for all time as a flood-control dike. That contention simply cannot be read into the deed.

■■ The plaintiffs contend that the giving and re-

ceiving of the 1926 correction deed constituted a practical construction of the intention of the parties to create and maintain a flood-control dike because the existing drainage districts were using the Denver Avenue fill as a boundary at the time the deed was given. The contention has no merit. The 1926 deed merely incorporates and reaffirms the conditions of the 1915 deed. The rights created in the 1915 instrument rise no higher by repetition. Such correction deeds relate back to the original conveyance. *Mason v. Jarrett,* 218 Ark 147, 234 SW2d 771; 16 Am Jur 629, Deeds § 337.

The fact that the two drainage districts elected to treat an existing highway fill as a boundary between them did not convert the obligation to maintain a highway fill into an obligation to maintain a flood-control dike. The plaintiff cites a number of cases which deal with the efficacy of covenants running with the land to create benefits for subsequent grantees. The general proposition is not challenged. *Guild v. Wallis et al,* 150 Or 69, 40 P2d 737, 41 P2d 1119, 42 P2d 916, 130 Or 148, 279 P 546; *Beck v. Lane County,* 141 Or 580, 18 P2d 594. No case, however, holds that the use of an improvement by third persons for purposes not contemplated in the deed can change the nature of the original obligation. The cases to the contrary are numerous. See 26 CJS 1045, Deeds § 147, where the general rule is stated that conditions, covenants, and restrictions cannot be extended beyond the clear meaning of the language used.

The question is not whether the conditions in the deed are covenants which run with the land, but whether the conditions created the interests now being claimed for them. The deed relied upon by the plaintiff takes up 13 pages of the printed brief. If the

draftsman of the deed had intended to bind the grantees to the maintenance of permanent flood-control dikes, a dozen additional words to that effect could have been incorporated into the carefully prepared instrument.

The plaintiff takes exception to a comment by the trial court in sustaining the demurrers that the flood of 1948 was an event which was not within the contemplation of the parties to the deed in 1915, and that this was a further ground for denying liability. The comment was redundant in view of the fact that the covenants in the deed created no obligation to maintain flood-control dikes. It is therefore unnecessary to decide whether or not a *viz major* would have been within the contemplation of the parties had the deed contained specific covenants for flood-control dikes.

The judgment of the trial court being free from error, it is affirmed.