## JOHNSTON v. WADSWORTH.

[S. C. 34 Pac. Rep. 13.]

1. SPECIFIC PERFORMANCE OF CONTRACT TO PURCHASE LAND — EQUITY.—Specific performance to enforce a contract for the purchase of land will be granted at the instance of the vendor when he tenders a deed, since the relief asked is not only the payment of money but the acceptance of the deed.

2. SPECIFIC PERFORMANCE — VENUE — CODE, ¿ 387.— A suit for the specific performance of a contract to purchase land is one in personam and not in rem, and may be brought in a county other than that in which the land lies, notwithstanding section 387 of Hill's Code, providing that suits for the specific performance of agreements relating to real estate shall be commenced and tried in the county where the subject of the suit is situated.

3. SPECIFIC PERFORMANCE — WAIVER OF OBJECTION TO VENUE — CODE, ¿ 388.— The objection that a suit is not brought in the proper county is too late after trial upon the merits.

4. CONTRACT TO PURCHASE LAND — MUTUALITY.— An agreement by a vendor upon a proper consideration to repurchase land if the vendee shall so desire, is not void for want of mutuality, where the option is exercised within the time limited. When the option is exercised the minds of the parties meet and the contract becomes mutual. *

5. CONSIDERATION — SEAL — STATUTE OF FRAUDS — CODE, ¿ 785.— A seal is of itself the expression of a consideration sufficient to satisfy the state of

---

* NOTE.—The case of House v. Jackson, ante, p. 89, contains a discussion of the question whether an owner of land can be compelled to comply with an agreement to sell it. There is a valuable note on the rights that are conferred by a "refusal" or an "option" on land with the case of Litz v. Goosling, 21 L. R. A. 127.— REPORTER.

frauds, requiring an agreement or memorandum for the sale of lands to express the consideration.

Multnomah County: LOYAL B. STEARNS, Judge.

This is a suit in equity by S. R. Johnston against Philip C. Wadsworth, for the specific performance of a written contract. The complaint alleges that the plaintiff and defendant entered into an agreement whereby the defendant, in consideration of the sums to be paid as alleged, agreed to procure title for plaintiff to certain school lands belonging to the state, and at the same time, and as a part of said agreement, expressly stipulated that if the plaintiff should be dissatisfied with the land at any period within six months from or after the date of said agreement, and if plaintiff should so desire, the defendant would purchase said lands from him at the rate of three dollars per acre; that in pursuance of such agreement, application was duly made for the purchase of the land described in the complaint, and plaintiff made the purchase relying upon defendant's agreement to repurchase the land; that upon examining such land, the plaintiff ascertained that the same was of little or no value, and thereupon notified the defendant of his desire that he should repurchase the same in accordance with his agreement, which the defendant failed and refused to do; that the plaintiff has made due tender to the defendant of a transfer of said land in compliance with his agreement, etc. A demurrer to the complaint was interposed by the defendant on two grounds: *first*, that the complaint does not state facts sufficient to constitute a cause of suit; and, *second*, that the court did not have jurisdiction of the subject of the suit. The demurrer was overruled, and the defendant answered, denying the allegations of the complaint and alleging that the procurement of the land for the plaintiff constituted the only contract that was made between them and that it had been fully executed. The cause being referred to

Frederick R. Strong, Esq., the findings were for the plaintiff, which, after argument, were affirmed by the court and a decree was entered specifically enforcing the contract, from which decree the defendant has brought this appeal. Affirmed.

MR. CHIEF JUSTICE LORD delivered the opinion of the court:

1. The objection to the jurisdiction, presented by the demurrer, is based on two grounds: *First,* that the plaintiff has a plain, and adequate remedy at law; and, *second,* that the suit was not brought within the county in which the land is situated. Upon the first point the contention is that the facts show that the only relief sought is a money judgment, and hence that the plaintiff is not entitled to the remedy of a specific performance unless there were acts alleged which the defendant is required to perform other than the single payment of money. "While it is true," as was said by Mr. Pomeroy, "that in these suits by the vendor there is generally some other act to be done by the purchaser besides the simple payment of money, the performance of which may be enforced by the decree, yet," he adds, "even in those cases, when no such act has been undertaken by him in the contract, he may be compelled to accept the deed, or assignment, or other subject matter, as well as to pay the price, so that the decree is not purely one for the recovery of money": Pomeroy on Specific Performance, § 6. In the case at bar the plaintiff alleges, among other things, a tender to the defendant of a deed for the land, and that he brings the same into court and thereby tenders to defendant a transfer of all his rights to such land. Upon this state of facts, the court would be authorized by its decree to compel the defendant to accept the deed, as in fact it has done, as well as to pay the price of the land, so that the decree would not be purely one for the recovery of money. The general rule

that a court of equity will take cognizance of contracts sought to be enforced by the vendor as well as those sought to be enforced by the vendee, is well settled, for Mr. Pomeroy says: "Since the vendee may, by a suit in equity, compel the execution and delivery of the deed, the vendor may also by a similar suit, enforce the undertaking of the vendee, although the substantial part of his relief is the recovery of money": Pomeroy on Specific Performance, § 6. "As the vendor of land," says Mr. Waterman, "seeks only the payment of the purchase money, it might be contended that he had an adequate remedy at law, and therefore could not sustain a bill for the specific performance of the contract; but," he adds, "a moment's reflection will, however, show that damages would not restore him to the situation he would be in if the contract were performed": Waterman on Specific Performance, § 15. Pecuniary damages for the breach of the contract is not what the plaintiff asks or is entitled to receive at the hands of a court of equity. He asks to receive the price stipulated to be paid in lieu of the land. While it is said that specific performance is not a matter of absolute right in a party, but of sound discretion in the court, yet the rule has come to be established, if a contract respecting real property is in writing and is certain, fair in all its parts, for an adequate consideration, and capable of being performed, it is as much a matter of course for courts of equity to decree specific performance of it as it is for a court of law to give damages for the breach: 2 Beach, Equity Jurisprudence, § 636; Tiedeman, Equity Jurisprudence, § 493.

2. The second objection to the jurisdiction is based on the fact that the lands which the defendant contracted to purchase are situated in Jackson County, and the suit to enforce the contract was brought in Multnomah County: It is claimed that under section 387, Hill's Code, the circuit court of Multnomah County had no jurisdiction to

XXIV. OR.— 32.

enforce the specific performance of a contract in relation
to lands located in Jackson County. As a general rule it
is not necessary in equity that the subject-matter of a suit
should be corporeally within the jurisdiction of the court,
provided that the parties are in person within the juris-
diction, so that they can be personally summoned to an-
swer the complaint; hence the rule that where the court
has jurisdiction of the proper parties, it may compel them
to do equity in relation to lands located without its juris-
diction in another county or state:    Tiedeman, Equity
Jurisprudence, § 475.  "A suit for the specific performance
of a contract," said GRAY, C. J., "proceeds *in personam,*
and may be maintained in any court of equity which
has jurisdiction of the parties, even if the land lies in an-
other state or foreign country": *Brown* v. *Desmond,* 100
Mass. 269; see also *Gardner* v. *Ogden,* 22 N. Y. 327;
*Sutphen* v. *Fowler,* 9 Paige, 281; *Massie* v. *Watts,* 6 Cranch,
148; 3 Pomeroy, Equity Jurisprudence, § 1313.  The relief
sought by this suit is not to determine title, but to recover
the price stipulated to be paid for the land.  The decree is
*in personam* and not *in rem,* and it would seem, therefore,
when the parties are within its jurisdiction, a court of
equity may make its decree *in personam* for the specific
performance of a contract for the sale of land in another
county, notwithstanding section 387.

3.   However that may be, if the plaintiff brought his
suit in the wrong county the defendant waived this objec-
tion under section 388 by not availing himself of the right
to a change of venue to the proper county.  We think,
therefore, that it is too late to raise this objection after a
suit has been tried on its merits.

4.   The next objection is that the contract is not mu-
tual.  This objection is based on the well settled rule that
equity will not specifically enforce a contract unless it is
mutual in its obligations.   But this rule is subject to cer-
tain well established exceptions, to which, it is claimed,

the contract sought to be enforced belongs. The facts show that defendant made an agreement with the plaintiff, in consideration of the payment of a certain sum of money, a part of which was to be retained by the defendant, and a part thereof to be paid to the state of Oregon, whereby he promised to obtain title for the plaintiff to certain school lands belonging to the state of Oregon, and that as a part of said contract, the defendant made and delivered to the plaintiff his agreement, as follows:—

PORTLAND, Oregon, February 19, 1891.

I hereby covenant and agree to purchase from S. R. Johnston six hundred and forty (640) acres of land, three hundred and twenty (320) applied for from the state of Oregon by John Harriman and transferred to him, and three hundred and twenty (320) applied for in his own name, at the expiration of six months from date if he so desires, at the rate of three dollars ($3) per acre.

(Signed)          PHILIP C. WADSWORTH.    [SEAL]
Witnesses: E. J. YOUNG.
          JOHN HARRIMAN.

—and at the same time agreed that if the plaintiff should, within six months after the date of the sale, be dissatisfied with the lands sold to him by the defendant, he, the defendant, would purchase the same upon the terms set forth in the agreement. The lands referred to and described were applied for and purchased under the agreement, and, in accordance with the terms of such purchase from the state, the plaintiff delivered certain promissory notes, etc., and made the purchase, and entered into the agreement, relying solely upon the representations of the defendant, and upon his written promise to repurchase the land as set out in the agreement. The plaintiff, after examining such land, was dissatisfied therewith, and notified the defendant of his desire that he should repurchase

the same in accordance with the terms of his agreement, and the defendant then promised in writing to so repurchase the land, and further promised to assume the promissory notes given to the state for a part of the purchase price. The defendant did not comply with his agreement, and has wholly failed and neglected to repurchase the land at the price named, or for any other sum, and prior to the commencement of this suit the plaintiff tendered to the defendant a conveyance of the property and demanded that he repurchase the same in compliance with his agreement, and he has failed and refused to carry out the agreement. It also appears that the plaintiff has tendered to the defendant the transfer of said property, subject to the payment of said promissory notes by the defendant, and that such tender was refused. These facts are based on the testimony of the plaintiff, which is uncontradicted. At the time of the sale the plaintiff was engaged in the business of school teaching at Portland, and was unable to examine the lands owing to their location in a distant part of the state, and being unwilling to buy them without seeing the same, the defendant, to induce him to make the purchase, made the agreement in writing set out. At the expiration of the school term, the plaintiff examined the lands and found them utterly unfit for the purpose for which they had been purchased. The defendant introduced no testimony, and relies solely upon technical suggestions to defeat the enforcement of the agreement.

One of the objections, as before stated, is that the agreement set out is wanting in mutuality. The decided cases show that the rule as to mutuality is greatly circumscribed by numerous limitations, and that a conditional or unilateral contract may come within these exceptions: 2 Beach, Equity Jurisprudence, § 586; Waterman on Specific Performance, § 200. The principle is well settled that where an owner of land gives another, for a sufficient con-

sideration, an option or privilege for the purchase of land within a given time, in writing, with a full knowledge of the fact that he is bound and the other party is not, it is such a contract as will be enforced in equity at the instance of the party holding the option. As Mr. Justice NEWMAN asks, "Does such a contract indeed lack mutuality? The seller for a fair consideration agrees to give the proposed purchaser a certain fixed time in which to make the contract mutual by acceptance of the offer to sell. If he accepts within the specified time, both parties are fully bound": *Johnston* v. *Trippe*, 33 Fed. Rep. 536. In *Hill* v. *Center*, 40 Cal. 67, the court says: "If the owner of an estate has fairly made a contract for a sufficient consideration received by him, by which contract he has himself stipulated that another person may, at the option of the latter, receive a conveyance of the estate upon the payment or tender of a fixed sum within a given time, what principle of equity is violated by making the owner comply with his contract? If the other party has obtained the option, he has fairly bought it and paid for it, and there is no principle or policy of law violated in its purchase." See also *Hawralty* v. *Warren*, 18 N. J. Eq. 124; *Clason* v. *Bailey*, 14 Johns. 484; *Schroeder* v. *Gemeinder*, 10 Nev. 355; Pomeroy, Specific Performance, § 169. In the case at bar the defendant sold the land to the plaintiff, and to protect him in case of dissatisfaction therewith, he gave him the option to disaffirm the contract if he so desired, in which event the defendant agreed to repurchase it. After the plaintiff notified the defendant that he was dissatisfied, and expressed the desire that he should repurchase the land in accordance with the terms of the agreement, the offer of the defendant to purchase was accepted by the plaintiff; so that when the plaintiff exercised the option within the time specified, the minds of the parties met, and the contract became mutual and enforceable by either party. We think, therefore, the contract as thus made,

the other conditions existing, is a proper subject of specific performance.

5. The last contention is that the agreement sought to be enforced is void because it does not state the consideration. The statute provides that an agreement for the sale of land is void unless the same, or some memorandum thereof expressing the consideration, be in writing, and subscribed by the party to be charged, etc.: Hill's Code, § 785. Under statutes of this character it has been held that if, from the terms of the writing, the consideration for the promise is inferable, it is expressed in such agreement within the meaning of the statute. And, while we think the consideration is apparent from a reasonable construction of the terms of the contract, yet the agreement, being under seal, the seal is itself the expression of a consideration sufficient to satisfy the statute. There are numerous authorities which show that it has been repeatedly held that the words " for value received " sufficiently comply with statutes like ours which require the consideration to be expressed: *Day* v. *Elmore,* 4 Wis. 214; *Watson* v. *McLaren,* 19 Wend. 557; *Miller* v. *Cook,* 23 N. Y. 495; *Osborne* v. *Baker,* 34 Minn. 307 ( 25 N. W. Rep. 606 ); *Brooks* v. *Morgan,* 1 Har. ( Del.), 123; *Whitney* v. *Stearns* 16 Me. 394. The text writers also generally state the law to be that the words " for value received " sufficiently express the consideration : 1 Reed, Statute of Frauds, § 430; Brown, Statute of Frauds, § 408a; Daniel, Negotiable Instruments, § 1767; 3 Parsons, Contracts, 16; Brandt, Suretyship, § 70. It is the law, too, that the seal is a sufficient expression of the consideration: Reed, Statute of Frauds, § 431. " We have held again and again," said COWAN, J., " that a seal expresses a consideration within the meaning of the statute ": *Douglas* v. *Howland,* 24 Wend. 45. If the memorandum is under seal, the implication of consideration therefrom is sufficient: Brown, Statute of Frauds, § 408a. WOODRUFF, J., said: " An instrument

under seal is held not void under the statute, although no consideration is in terms stated therein, upon the ground that the seal imports consideration. It is sufficient if, upon the face of the instrument, consideration is a necessary legal implication": *McKenzie* v. *Farrell et al.* 4 Bosw. 207. The object of the statute of frauds was to prevent the facility to fraud and perjury to which contracts dependent upon the memory of witnesses were exposed, by requiring them to be reduced to writing. When this is done, there does not seem to be any reason why the consideration might not be proved by parol, as in the case of any other contract, or, if there is any reason for expressing the consideration, the true one ought to be expressed; yet the authorities cited show that the words "for value received," or that a seal itself, sufficiently expresses the consideration. The fact is, as MITCHELL, J., said: "The expression of the consideration is so unnecessary in order to prevent the mischief aimed at, that the courts have always been inclined to give this provision of the statute a very liberal construction, which sometimes, as in the instances cited, reduces it to a mere formality": *Osborne* v. *Baker*, 34 Minn. 307 (25 N. W. Rep. 606). In view, therefore, of the authorities, we think the seal sufficiently expresses the consideration within the meaning of the statute.

The decree is AFFIRMED.