Argued February 19; reversed March 3; rehearing denied
March 24, 1936

# BENTON COUNTY STATE BANK *v.*
# NICHOLS ET UX.

(54 P. (2d) 1166)

*W. C. Winslow,* of Salem, for appellants.

*Karl T. Huston,* of Corvallis (Lester G. Oehler, of Corvallis, on the brief), for respondent.

ROSSMAN, J. The complaint is in the usual form of a complaint upon a promissory note and describes a note of $1,000, signed by the defendants January 3, 1933. The answer, after denying all averments of the complaint except as subsequently admitted, alleges "for a further and separate answer and by way of counterclaim" the facts which we shall now briefly mention.

In the early part of 1930 the Benton-Lane Lumber Company was heavily indebted to the plaintiff. For the purpose of liquidating the indebtedness, the plaintiff and the lumber company "obtained a permit from the Corporation Commissioner of the State of Oregon for the sale of additional stock of the Benton-Lane Lumber Company, and put on a campaign to sell the same, applying the money derived therefrom to the

liquidation and payment of the indebtedness of the Benton-Lane Lumber Company to the said plaintiff''. As a part of the campaign, and in order to induce the defendants to purchase some of the stock, the plaintiff made five representations to the defendants which were untrue and which the defendants believed. We quote further from the answer: ''Said representations were known to the said plaintiff to be false and fraudulent and were made for the purpose of inducing the defendants to purchase stock in said corporation to the extent of $1,000; and the defendants, relying upon said representations, and believing the same to be true, did purchase stock and at said time gave to said bank the note of these defendants for $1,000, the purchase price of said stock, which said money was then and there turned over to said plaintiff herein in liquidation of the indebtedness of the said Benton-Lane Lumber Company to the said bank * * *. The only consideration for the note mentioned and described in plaintiff's complaint was the purchase of said stock and said stock was and is wholly worthless.'' The answer avers that the note mentioned in the complaint is a renewal note of the one given by the defendants at the time of the purchase of the stock, and that the defendants did not discover plaintiff's deceit until after January 3, 1933. The answer concludes: ''On account of matters and things herein set forth and alleged, on account of the false and fraudulent representations mentioned and described herein, and on account of the premises, defendants have been and are damaged in the sum of $1,000, together with interest thereon at the rate of eight per cent from the 31st day of March, 1930, until paid.'' The answer concludes with a prayer that the complaint be dismissed and that the defendants have ''affirmative judgment for the amount of the

difference between the amount due on the note referred to in plaintiff's complaint and the amount of the damages suffered by these defendants''. We have not reviewed the representations set forth in the answer nor the allegations showing their falsity because' the plaintiff does not contend that these averments are insufficient.

Plaintiff's demurrer was based upon a contention that ''said further and separate answer by way of counterclaim does not state facts sufficient to constitute a defense or counterclaim''. The plaintiff, in support of the order which sustained its demurrer, argues that the transaction upon which its complaint is based was a loan of money made by it to the defendants, and that the transaction upon which the answer is predicated is a purchase of stock by the defendants from the Benton-Lane Lumber Company. The defendants argue that the answer shows that the plaintiff's loan to the defendants and the latters' purchase of the stock were parts of one transaction. Section 1-611, Oregon Code 1930, permits a defendant to file as counterclaims all causes of action which he may possess against the plaintiff provided they arise ''out of the contract or transaction set forth in the complaint, as the foundation of the plaintiff's claim''.

If the averments of the answer are true, the plaintiff and the lumber company were mutually interested in the sale of the lumber company's corporate stock. The plaintiff was interested because each sale brought to it the amount paid by the purchaser for his purchased stock, and the lumber company was interested because the money paid for the stock reduced the lumber company's debt to the bank. The answer alleges that the plaintiff, not the lumber company, made the fraudu-

lent representations. It alleges that the plaintiff, not the lumber company, made the sale. The plaintiff was the active participant. The lumber company was passive. It chanced to be the debtor and became a mere conduit through which the purchaser's money passed to the plaintiff. The answer alleges that these fraudulent representations induced the defendants not only to buy the stock but also to borrow the money for which the note was given. Without the loan the purchase would have been impossible, and without the fraudulent representations the defendants would not have become borrowers and buyers. In other words, the defendants would not have borrowed had they not been persuaded to buy and borrow, and the plaintiff would not have induced the defendants to borrow and buy had the lumber company not been indebted to it. The plaintiff's ultimate interest, therefore, was to get the lumber company into funds so that these funds could be applied towards the liquidation of the lumber company's debt. The fraudulent representations were a part of the loan transaction. Thus, if the answer is true, the plaintiff contrived a scheme the purpose of which was to liquidate the lumber company's debt to it and this scheme took the following form: (1) Plaintiff bound the lumber company to deliver to the plaintiff the proceeds of sales of the lumber company's new issue of capital stock; (2) plaintiff and the lumber company obtained a permit for the sale of the stock; (3) plaintiff persuaded the defendants to buy stock; (4) it loaned the defendants the needed sum; and (5) the lumber company delivered to the plaintiff the $1,000 which the latter had handed to the defendants and which they had handed to the lumber company. Assuming the averments of the complaint to be true, each subdivision was a part of the entire scheme. None of

these things would have been effective unless all were done.

 This court, like many other courts in jurisdictions where the counterclaim statute employs the term "transaction", has struggled with that term. The decisions of this court, in construing the word "transaction", like the decisions of other courts, have undertaken to clarify the meaning which the word itself signifies. Our decisions have repeatedly pointed out that the term should be liberally construed and that a comprehensive meaning should be attached to it. These decisions state that the purpose of the enactment is to enable parties to determine in a single action their claims against one another, so far as they arise out of the same transaction. Our decisions have pointed out that the word "transaction" embraces more than the word "contract", for a transaction may be a tort. It is an occurrence. A transaction includes all that takes place in the conducting of any item of business or an affair. Our decisions also make it clear that in determining the extent and the nature of the transaction for the purpose of determining whether the counterclaim arose out of the transaction "set forth in the complaint as the foundation of the plaintiff's claim", we are not restricted to the averments of the complaint, but may also resort to the averments of the counterclaim itself. Apart from the fact that the circumstances present in *Gary Coast Agency, Inc., v. Lawrey,* 101 Or. 623 (201 P. 214), were quite similar to those now before us, our other decisions do not throw much light upon our present problem except that they do give us the general rules above stated. Practical experience has apparently shown that when the cause of action alleged in the complaint and the one alleged in

the counterclaim have important questions in common the two can be conveniently and expeditiously tried together. Thus, recent statutes and the amended rules of the English courts have abandoned the use of the term "transaction" and now permit the defendant to set forth by way of counterclaim all of his claims against the plaintiff, subject, however, to separate trials being ordered if the court believes that all can not be tried together conveniently. See 26 Mich. Law Rev., 1–50; Clark on Code Pleading, p. 455. The purpose of our counterclaim statute, as above indicated, is the same as these recent enactments; that is, to expedite the transaction of judicial business. The very fact that a claim and a counterclaim present important questions in common is a strong indication that, in all likelihood, both claims arose out of the same transaction. Having in mind the fact that, in determining the transaction out of which these two claims arose, we may scrutinize not only the claim but also the counterclaim, it is our belief that the two arose out of the same transaction. See 57 C. J., Set-off and Counterclaim, p. 412, § 60. We have not overlooked *Vulcan Metals Co. v. Simmons Mfg. Co.*, 248 Fed. 853, cited by the plaintiff, but the holding in that decision does not convince us that the pleadings now before us reveal more than one transaction.

It follows that the circuit court erred when it sustained the demurrer to the counterclaim. The judgment must, therefore, be reversed.

REVERSED AND REMANDED.

CAMPBELL, C. J., KELLY and BELT, JJ., concur.