Argued December 15, 1960, reargued April 14, reversed and
remanded May 31, 1961

# MACK TRUCKS, INCORPORATED *v.* TAYLOR

362 P. 2d 364

*Charles S. Crookham*, Portland, argued the cause for appellant. With him on the brief were Vergeer & Samuels, Portland.

*Kenneth A. Poole*, Eugene, argued the cause for respondent. With him on the brief was Donald F. Bach, Eugene.

Before MCALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

O'CONNELL, J.

This is an action of replevin brought in Linn county to recover the possession of four trucks pursuant to

the forfeiture and repossession provision of a purchase money chattel mortgage executed by defendant mortgagor in favor of plaintiff's assignor, the seller-mortgagee. The execution and default of each mortgage was set out in a separate count. In each count plaintiff demanded possession of the truck covered by the particular mortgage, or, in the alternative, the unpaid purchase price.

The complaint alleged that the trucks were located in Linn County, Oregon at the time of the commencement of the action. Defendant's answer denied generally the allegations in plaintiff's complaint, including the allegation as to the situs of the trucks in Linn county. Defendant by way of cross complaint prayed for the dismissal of each of the four causes of action set forth in plaintiff's complaint and as a counterclaim sought recovery of damages for breach of warranty in the sale of the trucks. During trial defendant withdrew the counterclaims as to three of the four causes of action set forth in his cross complaint. By motion and demurrer plaintiff challenged each of defendant's counterclaims on the ground that they would not lie in an action of replevin.

After the parties had rested, the trial judge concluded that there was no evidence to prove that the trucks in question were situated in Linn county at the commencement of the action and pursuant to that conclusion instructed the jury, "for that reason it is the duty of the court to direct you to return a verdict in favor of the defendant for the possession of these trucks." He went on to explain: "The reason is it's a necessary element of the case and one of the issues that the proof show that the trucks in question were situated in Linn County, Oregon, on the 20th day of February, 1958, and that proof is lacking of any part

of it." Plaintiff's counsel took exception to the instruction on the ground that there was sufficient evidence from which the jury could find that the trucks were in Linn county at the commencement of the action.

It is apparent that the instruction was based upon the assumption that in an action to recover possession of a chattel the situs of the chattel in the county in which the action is brought is a jurisdictional requisite. The same assumption was made both by plaintiff's trial counsel in making objection to the instruction and by plaintiff's counsel on appeal in delineating the issue simply as to whether there was sufficient evidence to support the conclusion that the trucks were located in Linn county when the action was commenced. Our first task is to decide whether this assumption is correct.

ORS 14.040 provides as follows:

"14.040 Actions and suits that are to be brought where subject is situated. Actions and suits for the following causes shall be commenced and tried in the county in which the subject of the action or suit, or some part thereof, is situated:

"(1) Actions for the recovery of real property, or an estate or interest therein, or for injuries to real property;

"(2) Actions for the recovery of any personal property distrained for any cause;

"(3) Suits for the partition of real property;

"(4) Suits for the foreclosure of a lien or mortgage upon real property;

"(5) Suits for the determination of an adverse claim, estate, or interest in real property, or the specific performance of an agreement in relation thereto."

The question is whether the statute states a jurisdictional requirement or simply a venue requirement

in the instances enumerated. In other words, does the filing of an action in the wrong county result in a lack of jurisdiction of the subject matter? The Oregon cases do not present consistent answers to this question. Warner, Venue of Civil Causes in Oregon, 1 Or L Rev 142 (1922), and Hurley, Venue in Civil Proceedings in Oregon, 36 Or L Rev 47 (1956).

1. The specific question before us is whether an action to recover the possession of personal property must be brought in the county in which the property is situated at the commencement of the action in order that the court acquire jurisdiction of the subject matter. We hold that the situs of the chattel in the county in which the action is commenced is not a jurisdictional requisite.[1] This is in accord with the view taken in the following Oregon cases recognizing that ORS 14.040 is a venue statute. *Mutzig v. Hope*, 176 Or 368, 158 P2d 110 (1945); *Wodecki v. West*, 165 Or 504, 108 P2d 521 (1940); *Schleef v. Purdy et al.*, 107 Or 71, 214 P 137 (1923); *Wheeler v. Steadman*, 99 Or 414, 195 P 818 (1921); *Ward v. Hamlin*, 71 Or 248, 142 P 621 (1914); *Johnston v. Wadsworth*, 24 Or 494, 34 P 13 (1893); *Marx and Jorgenson v. Croisan*, 17 Or 393, 21 P 310 (1889). The contrary view appears to have been taken in the following cases. *Martindale v. Scott*, 86 Or 648, 168 P 933 (1917); *Byers v. Ferguson*, 41 Or 77, 65 P 1067, 68 P 5 (1902); *Moorhouse v. Donaca*, 14 Or 430, 13 P 112 (1887). In the following cases it is not clear whether the statutory provision regarding place of trial is treated as a matter of venue or as a jurisdictional requirement. *Montesano L. Co.*

---

[1] We note that ORS 14.030 expresses the scope of the court's jurisdiction in broad terms: "14.030 Jurisdiction as affected by place where cause of action or suit arises. When the court has jurisdiction of the parties, it may exercise it in respect to any cause of action or suit wherever arising, except for the specific recovery of real property situated without this state, or for an injury thereto."

*v. Portland Iron Wks.*, 78 Or 53, 152 P 244 (1915); *Beard v. Beard,* 66 Or 512, 520, 133 P 797, 134 P 1196 (1913); *Templeton v. Lloyd,* 59 Or 50, 115 P 1067 (1911); *Byers v. Ferguson,* supra; *Kirk v. Matlock,* 12 Or 319, 7 P 322 (1885). The foregoing cases, to the extent they hold that the situs of a chattel located in this state is a jurisdictional requisite, are overruled; and any statements to that effect in any of our cases are expressly disapproved. To be distinguished on their facts are cases involving property located outside the state, *Martindale v. Scott,* 86 Or 648, 168 P 933 (1917), especially when real property is the subject of the action. See, *Dippold v. Cathlamet Timber Co.,* 98 Or 183, 193 P 909 (1920); *Montesano L. Co. v. Portland Iron Wks.,* 78 Or 53, 152 P 244 (1915).

■ The presence of the chattel in the county in which the action to recover possession is brought is essential if, but only if, defendant raises the question of improper venue. In an action to recover possession of a chattel it is entirely immaterial where the chattel happens to be located in this state unless the defendant wishes to rely upon ORS 14.040 and insist that the action be tried in the county in which the chattel was situated at the time the action was commenced. If the defendant wishes to raise the question of venue he must do so by a timely motion. A motion to change the place of trial comes too soon if made prior to the time the cause is at issue on a question of fact, ORS 14.120, 52.530 (3); cf., *Mutzig v. Hope,* 176 Or 368, 395-396, 158 P2d 110 (1945), or comes too late if made after the case has been tried on its merits. *Geis v. Gallus,* 130 Or 619, 278 P 969 (1929); *Hanzlik v. Hanzlik,* 110 Or 95, 100-101, 222 P 1081 (1924); *Schleef v. Purdy et al.,* 107 Or 71, 79-81, 214 P 137 (1923) (objection too late when raised for the first time upon

trial); *Johnston v. Wadsworth*, 24 Or 494, 498, 34 P 13 (1893).

■ We take this opportunity to clarify our law with respect to the procedure by which the issue of improper venue may be raised. We said in *Mutzig v. Hope,* supra, that objection could be made to improper venue by a motion to quash or dismiss. This was incorrect. A motion to quash or dismiss would have the effect of vitiating the cause filed by plaintiff. But since, as we hold, the plaintiff's improper choice of the place for trial does not prevent the court from acquiring jurisdiction, the cause remains alive and cannot be quashed or dismissed; the defendant's only remedy is a motion for change of venue. If the court rules against him and he wishes to pursue the matter further, he must then proceed by mandamus in this court to force the trial court to change the venue. Although the statutes leave the matter in some doubt, we construe them as providing the same procedure for raising the issue of improper venue in both actions at law and suits in equity. Cf., ORS 14.110 and ORS 14.120. But cf., *Mutzig v. Hope*, 176 Or 368, 396-397, 158 P2d 110 (1945). See, Hurley, Venue in Civil Proceedings in Oregon, 36 Or L Rev 47, 60-68 (1956).

In the case at bar defendant made no motion for a change of venue. The case had been tried on its merits before objection was formally raised as to the place of trial. The objection came too late. *Geis v. Gallus*, 130 Or 619, 278 P 969 (1929); *Hanzlik v. Hanzlik*, 110 Or 95, 222 P 1081 (1924); *Schleef v. Purdy et al.*, 107 Or 71, 214 P 137 (1923); *Johnston v. Wadsworth*, 24 Or 494, 34 P 13 (1893).

The trial court, proceeding on the erroneous assumption that the plaintiff's action would not lie in

the absence of proof of the location of the trucks in Linn county, directed a verdict for defendant. Plaintiff took an exception to the court's ruling but did so on the ground that there was sufficient evidence from which the jury could conclude that the trucks were located in Linn county at the commencement of the action. The reason advanced by plaintiff in support of its exception missed the mark. It was improper to direct a verdict in this case, not because there was no evidence to support the conclusion that the trucks were in Linn county at the commencement of the action, but rather because the presence of the trucks in the county was required only as a matter of proper venue; and defendant, by failing to timely raise the issue, waived any objections with respect to venue. Consequently, the fact that the trucks may not have been located in Linn county at the commencement of the action became wholly immaterial. Thus, it was error to direct the verdict in favor of defendant and the cause must be remanded for a new trial.

Another important procedural question is raised on this appeal. As we have noted above, the defendant filed a cross complaint in which, by way of counterclaim, he sought to recover damages for an alleged breach of warranty in the sale of one of the trucks. The damages claimed for the alleged breach of warranty exceeded the balance due on the contract of sale of the truck. Over plaintiff's objection defendant's counterclaim was submitted to the jury. The verdict awarded possession of the truck to defendant and also awarded him $1,594.60 as damages for breach of warranty. Plaintiff contends that where an action of replevin is brought "it is possible to have a set-off [only] and not an affirmative counterclaim for damages over and above the value of the property." ORS

16.300, our counterclaim statute, provides in part as follows:

"16.300  Counterclaims in actions, including pleas in abatement. (1) The counterclaim mentioned in subsection (2) (b) of ORS 16.290 must be one existing in favor of the defendant, and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action:

"(a) A cause of action arising out of the contract or transaction set forth in the complaint, as the foundation of the plaintiff's claim.

"(b) In an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action."

Our previous cases leave in doubt the interpretation of the foregoing statute. In *Zimmerman v. The Sunset Lumber Co.*, 57 Or 309, 111 P 690, 32 LRA NS, 123, Ann Cas 1913A 103 (1910), the court said that where an action is brought "to recover possession of property, the right to which arises upon contract, such as, upon chattel mortgage * * * any matter tending to defeat plaintiff's right of possession may be pleaded as a setoff * * * and if there is no debt there is no right of possession in the mortgagee * * *." (57 Or at p. 313) The court went on to say, however, that "to defeat the action the setoff must equal the debt." (57 Or at p. 313) The court held that since the counterclaim revealed upon its face that the amount claimed as an offset was not equal to the unpaid balance on the conditional sales contract under which plaintiff sought repossession, a demurrer to the counterclaim was properly affirmed. Although the case does not directly hold that a counterclaim equal to or greater than the unpaid debt is permissible under

our counterclaim statute, the intimation is clear that the statue was so considered and would be so construed.

Despite that clear intimation of the Zimmerman case, the contrary view was taken in *McCargar et al. v. Wiley*, 112 Or 215, 229 P 665 (1924). In the Mc-Cargar case plaintiff brought an action of replevin to recover an automobile sold under a conditional sales contract which was in default. Defendant counter-claimed alleging that there was a breach of warranty, and that he had been damaged in an amount conceded to be due on the contract. The defendant recovered a judgment on his counterclaim in the amount of $295.75 which this court reversed on the ground that the counterclaim was not proper. In reaching this con-clusion the court said: "It must be obvious that the cause of action for the wrong complained of by the plaintiffs, namely, defendant's wrongful detention of their automobile, is not one arising on contract, but is based on tort, and therefore the defendant is not entitled to allege as a counterclaim in an action brought to recover the possession of the automobile a cause of action arising on contract under either subdivisions 1 or 2 of section 74 [now ORS 16.300]." (112 Or at p. 223) The court found "no legal connection what-soever" (112 Or at p. 224) between the action to re-cover possession of the chattel and the breach of warranty, in spite of the fact that plaintiff's action was and could be brought only because of defendant's default on the very contract which defendant alleged as the foundation for his counterclaim for breach of warranty. That is, defendant received possession of the chattel lawfully and his detention, or continued possession, would have been completely lawful except for the terms of the contract of sale which provided that the seller was to be entitled to possession upon

buyer's default in payments. It is this very same contract which gives rise to the counterclaim for breach of warranty.

In refusing to find that the breach of warranty arose out of the "transaction set forth in the complaint," as the statute requires, the court called attention to the fact that our statute does not contain the phrase "or connected with the subject of the action," a phrase which appears in the counterclaim statutes of many other states. The dissenting opinion in the McCargar case interpreted the counterclaim statute more broadly:

> "The transaction involved in the case at bar includes the sale and warranty of the automobile, the representations made to defendant by plaintiffs to induce him to make the purchase. The transaction set forth in the complaint as the foundation of plaintiffs' claim may fairly be said to embrace all the dealings between plaintiffs and defendant relating to the conditional sale and transfer of the machine. In a just sense the counterclaim of defendant arose out of such transaction or dealings." *McCargar et al. v. Wiley*, 112 Or at 251.

The absence of the words " 'or connected with the subject of the action' " did not, according to the dissent, "lessen or narrow the meaning" (112 Or at p. 252) of our counterclaim statute.

We are now of the opinion that the dissent in the McCargar case expresses the preferable view. *McCargar et al. v. Wiley*, 112 Or 215, 229 P 665 (1924) is, therefore, overruled.

■ The position we now take conforms not only with the weight of authority but also with the purpose of the counterclaim in modern practice. That purpose is to permit the expeditious and economical disposition

of various claims between the litigants in a single suit unless the issues are so unrelated that the consolidation of them would unduly complicate the trial. *Chicago & N. W. Ry. v. Lindell*, 281 U S 14, 17, 50 S Ct 200, 74 L Ed 670 (1930); Note, Sales—Set Off in an Action of Replevin, 2 Idaho L J 218, 219 (1932); Blume, A Rational Theory for Joinder of Causes of Action and Defences, and for the Use of Counterclaims, 26 Mich L Rev 1, 52, 56, 61 (1927); Note, Counterclaims—Theory of Action—Statutory Interpretation, 8 Or L Rev 377, 378 (1929); Howell, Counterclaims and Cross-Complaints in California, 10 So Calif L Rev 415 (1937); Clark and Surbeck, The Pleading of Counterclaims, 37 Yale L J 300, 315-316 (1927). As Clark, Code Pleading (2nd ed 1947), p. 658 states: "The only test which can be consonant with the function of the counterclaim is whether or not the particular counterclaim could, in the court's discretion, be expediently tried with the plaintiff's case." A similar idea was expressed by Mr. Justice ROSSMAN in *Benton Co. State Bank v. Nichols*, 153 Or 73, 78-79, 54 P2d 1166 (1936):

"* * * Practical experience has apparently shown that when the cause of action alleged in the complaint and the one alleged in the counterclaim have important questions in common the two can be conveniently and expeditiously tried together."

After referring to the changes made by statute and rules of court regulating counterclaim in the English practice, the court further stated:

"* * * The purpose of our counterclaim statute, as above indicated, is the same as these recent enactments; that is, to expedite the transaction of judicial business. The very fact that a claim and a counterclaim present important questions in com-

mon is a strong indication that, in all likelihood, both claims arose out of the same transaction."

■ The majority of the court in the McCargar case found the counterclaim objectionable not only on the basis of its restrictive interpretation of the counterclaim statute, but also upon the further ground that the statutes prescribing the form of the verdict and judgment in an action for the recovery of personal property (now respectively ORS 17.410 and ORS 18.110)② do not permit the modification of the verdict and judgment by an affirmative counterclaim award in favor of the defendant. Mr. Justice Burnett, specially concurring, was of the opinion that the only damages contemplated by the statute prescribing the form of the verdict (now ORS 17.410) were the damages for the wrongful detention or taking of the property and not damages for fraud in the sale transaction.

We do not regard ORS 17.410 and 18.110 as setting any such limits on the verdict and judgment in an action for the recovery of a chattel. It seems clear that these sections were intended merely to state the form of verdict and judgment in the usual case where the right to possession of the chattel and the damages, if any, for its wrongful detention are the sole issues.

---

② "17.410 Verdict in action for specific personal property. In an action for the recovery of specific personal property, if the property has not been delivered to the plaintiff, or the defendant by his answer claims a return thereof, the jury shall assess the value of the property, if their verdict is in favor of the plaintiff, or if they find in favor of the defendant, and that he is entitled to a return thereof, and may at the same time assess the damages, if any are claimed in the complaint or answer, which the prevailing party has sustained by reason of the detention or taking and withholding of such property."

"18.110 Judgment in action for recovery of personal property. In an action to recover the possession of personal property, judgment for the plaintiff may be for the possession, or the value thereof, in case a delivery cannot be had, and damages for the detention thereof. If the property has been delivered to the plaintiff, and the defendant claims a return thereof, judgment for the defendant may be for a return of the property, or the value thereof, in case a return cannot be had, and damages for taking and withholding the same."

ORS 17.410 and 18.110 do not purport to prescribe the form of verdict and judgment on issues raised by counterclaims in actions to recover the possession of personal property. To say that ORS 17.410 and 18.110 had the limited scope ascribed to them by *McCargar et al. v. Wiley*, supra, would be attributing to the legislature the intent to segregate, as distinct from all of the other types of actions which might be brought, the action for the recovery of personal property and to exclude the use of a counterclaim in that one class of actions. There is no reason for such separate and special treatment and we do not think that the legislature so intended.

■ Where a counterclaim is interposed in a replevin action brought to recover goods sold under a sales contract, or covered by a mortgage, upon which the purchaser, or mortgagor, has defaulted, one of three possible situations is presented—(a) the amount of the counterclaim is less than the unpaid balance of the sales contract or mortgage; (b) the counterclaim equals the unpaid balance, or (c) the counterclaim exceeds the unpaid balance. A counterclaim of the first type is not permissible because it would not, even if proved, defeat or diminish the plaintiff's right of possession. *Zimmerman v. The Sunset Lumber Co.*, supra. It would seem more desirable to permit the interposition of a counterclaim in such a case as well as in the others and thus dispose of the entire controversy. The decree awarding possession to the plaintiff could be conditional upon the plaintiff's payment to the defendant of the amount awarded upon the counterclaim.[9]

---

[9] ORS 18.110 provides not only for awarding possession of the property to the prevailing party, but also in the alternative allows a judgment for the value of the property "in case a delivery cannot be had." If the property is lost or destroyed or for other reasons a return to the prevailing party cannot be effected, the prevailing party is relegated to money damages for the value of the property. "In such a case, a counterclaim of the first type would be permissible as it would reduce or diminish the plaintiff's recovery."

Counterclaims of the second type are clearly permissible since if proved the defendant owes no debt to the plaintiff and thus plaintiff would have no claim to possession of the property. With respect to counterclaims of the third type, there can be no doubt that they, like those of the second type, are permissible up to the amount of the unpaid balance on the contract or mortgage which is the foundation of the plaintiff's claim. And there would seem to be no reason consistent with the function of counterclaim practice for disallowing an affirmative award to the defendant to the extent that his proven counterclaim exceeds the amount due to plaintiff upon his claim. To disallow such an affirmative award would promote circuity of action. Further, it would appear to place the defendant in the dilemma of either asserting his counterclaim in part only, with the prospect of being barred from an independent suit to recover the balance because of the prohibition against splitting of causes of action, or alternatively bringing a later action for the entire amount of his claim.

We hold that the counterclaim was properly submitted to the jury. The judgment of the lower court is reversed and the cause is remanded for a new trial.