Argued October 10, affirmed December 13, 1961, petition for
rehearing denied January 4, 1962

# MONTGOMERY ET AL v. HALL

366 P. 2d 909

*Burton J. Fallgren,* Portland, argued the cause and submitted the brief for appellant.

*Clifford E. Nelson,* Portland, argued the cause for respondents. On the brief were Phelps, Nelson & Shepherd, Portland.

Before MCALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and LUSK, Justices.

ROSSMAN, J.

This is an appeal by the defendant, Edward Hall, from a judgment which the circuit court entered in favor of the plaintiffs in a replevin action; the defendant's answer had presented a counterclaim for $500 damages. The action which terminated in that manner was originally filed in the District Court for Multnomah County by the plaintiffs to recover the possession of an electronic instrument (combination television, radio and phonograph set) which they had sold to one Benjamin Pierce upon a conditional sales contract. In the district court the plaintiffs were awarded judgment upon the pleadings. Before that action was taken the case, although apparently a simple one, had undergone a considerable safari through the desert of nonproductive pleading. There had issued from it motions, demurrers, affidavits and orders in impressive quantity, but no shekels had come forth for client or counsel. After his defeat in the district court the defendant brought the case to the circuit court by appeal where also the parties seemed to find a greater attraction in the rules of practice than in the actual trial of the facts. Accordingly, we see again in the files motions, demurrers, affidavits, orders and briefs. The parties even met, in the circuit court, with a notice from one of the judges for the parties to appear

before the presiding judge and show cause why the case should not be dismissed for want of prosecution. Through its various brushes with the rules of pleading the complaint in the case came to bear the title of "Amended Complaint." And the answer adorned itself with something more impressive: "Second Amended Answer and Counterclaim." We observe that at one time there was included in the answer's title the term "Plea in Abatement."

The defendant presents the following assignments of error:

"The Circuit Court erred in denying Defendant's Motion for Judgment on the Pleadings."

"The Circuit Court erred in sustaining Plaintiffs' Demurrer to Defendant's Second Amended Answer and Counter-Claim."

"The Circuit Court erred in granting Plaintiffs' Motion for Judgment on the Pleadings declaring Defendant to be in default and affirming the District Court Judgment of February 3, 1958."

The defendant claims that he and a brother of his by the name of Jon T. Hall were the owners of the instrument in question when the replevin action was filed. He states that he and his brother acquired their title as the heirs at law of their mother, Roberta Cole, and seemingly believes that she acquired her interest from the plaintiffs by becoming a substitute vendee in the agreement whereby the plaintiffs sold the instrument to Benjamin Pierce. Possibly the defendant has in mind a novation, although he does not so state. He claims that while the instrument was in the plaintiffs' repair shop undergoing repairs, prior to his mother's death, it was negligently damaged to the extent of $500. The defendant met the plaintiffs' complaint (amended complaint) in part with denials

and also with a counterclaim in the sum of $500. Since our recent decision in *Mack Trucks, Inc. v. Taylor,* 227 Or 376, 362 P2d 364, a counterclaim may be pleaded in this type of action. The circuit court, before the decision in the Mack Truck case was announced, sustained the plaintiffs' demurrer to the counterclaim. It relied upon *McCargar v. Wiley,* 112 Or 215, 229 P 665. The ruling, which in the light of the Mack Truck decision was erroneous, constitutes the basis of the second assignment of error. The ruling was incorrect, but under the circumstances no stricture should be visited upon the judge who made it.

It is now desirable to take note of further facts.

In May of 1953 the plaintiff sold to the aforementioned Pierce the electronic instrument which we identified at the price of $957.50 upon a conditional sales contract calling for monthly payments in the amount of $39.90. The defendant does not claim that anything more than $458 was ever paid upon the contract. The defendant, Edward Hall, avers in his "Second Amended Answer and Counterclaim":

"That Roberta Cole died intestate in Multnomah County, Oregon, on or about June 11, 1956, and left Surviving her as next of kin and heirs at law, the defendant, and one, Jon T. Hall; that at the time of her death, Roberta Cole was the owner of said Television, Radio and Phonograph Combination Set, which passed by the laws of intestate succession to the next of kin and heirs at law, share and share alike.

"And that the claim for damage to said Television Set likewise passed to said next of kin and heirs at law."

■ It is in the manner that is stated in the quoted passages that the defendant claims that he inherited from his mother. We now come to the part of the

defendant's pleading which alleges the manner in which he says his mother substituted herself as buyer of the instrument in place of Benjamin Pierce; the part follows:

> "That at said time, Benjamin Pierce was living with Roberta Cole as husband and wife, and said Roberta Cole made the payments under the terms of said contract to plaintiffs in the sum of approximately $458.00; that said plaintiffs accepted said payments from Roberta Cole, and plaintiffs and Benjamin Pierce recognized Roberta Cole as the conditional vendee of said personal property."

We are aware of nothing additional in the pleadings which casts any light upon the question as to whether or not Roberta Cole was substituted in lieu of Benjamin Pierce as the buyer of the instrument. It is true that a paragraph of the answer alleges that "at the time of her death, Roberta Cole was the owner of said Television, Radio and Phonograph Combination Set." Generally, a bare allegation of ownership which is unaccompanied with supporting facts is deemed a pure conclusion of law and not an averment of facts. 71 CJS § 30(a), page 74. In the present instance Roberta Cole, at the time of her death could not have been the owner of the instrument, for the Second Amended Answer and Counterclaim shows that if she bore any relationship to the instrument she was a conditional vendee. The contract of conditional sale was then in default. The defendant does not claim that he removed the default. His counterclaim was an affirmance of the contract and not an attempt to terminate it.

■ We now return to the question as to whether or not Roberta Cole, by the process of novation, took the place of Benjamin Pierce as the conditional vendee

of the instrument. Unless she was substituted in place of Pierce in the purchase agreement as the vendee and Pierce was discharged it is clear that she secured no interest in the instrument and that, accordingly, the defendant could not have acquired by descent any interest from her. The defendant claims an interest only through his mother. The conditional sales contract which Pierce signed is not before us, and we are unaware of its terms except that it called for the payment of a total purchase price of $957.60 in monthly installments of $39.90 under "a conditional sales contract." Since the contract was effected May 22, 1953, and Mrs. Cole did not die until June 1, 1956, at which time no more than $458 had been paid upon the purchase price, it is clear that the contract was in a state of default at the time of her death.

Restatement of the Law, Contracts, § 425, states:

"Where a creditor by a contract with his debtor agrees to the immediate discharge of the debtor, in consideration of a promise by the debtor to a third person to render either the performance for which the debtor was previously bound, or some other performance, there is a novation discharging the debtor from his duty to the original creditor and subjecting him to a duty to the third person."

It will be noticed that the Restatement sets forth as a requisite condition of the novation the following: "Where a creditor by a contract with his debtor agrees to the immediate discharge of the debtor * * *."

Williston on Contracts, revised edition, § 1865, speaks to similar effect and says:

"Novation necessarily involves the immediate discharge of an old debt or duty, or part of it, and the creation of a new one. There is no novation until this has been accomplished. * * *"

See to similar effect *Dorsey v. Tisby,* 192 Or 163, 173, 234 P2d 557.

In *Miles v. Bowers,* 49 Or 429, 90 P 905, we ruled:

"* * * One of the essential elements to a novation is that there should have been an extinguishment of the old debt, and another is that there should have been a mutual agreement between all of the parties that the old debt should become the obligation of a new debtor: 21 Am. & Eng. Enc. Law (2 ed.), 662; *Kelso v. Fleming,* 104 Ind. 181 (3 N.E. 830). When the court found, as it did in the fifth finding, to the effect that the defendants sold and transferred their hotel business to the corporation in payment for their stock; that, as a part of the consideration therefor, the corporation assumed and agreed to pay the obligations incurred by defendants in their hotel business, including plaintiff's claim; and that on May 6, 1903, the corporation, by virtue of its promise, became liable for and agreed to pay plaintiff's demand—it expressly bases the consideration of the new promise upon the value of the goods and hotel business purchased, and thereby the court has also impliedly excluded from being a part of that consideration the extinguishment of the defendants' obligation and the release of the defendants. It nowhere appears, expressly or by necessary inference, that the parties to the contract of sale intended that the defendants should be released from their obligation to plaintiff; but the only legal inference deducible therefrom is that the corporation was to be and became the principal debtor, and the defendants were to be and became sureties in respect to the plaintiff's demand: *Haas v. Dudley,* 30 Or. 355 (48 Pac. 168); *Farmers' Nat. Bank v. Gates,* 33 Or. 388 (54 Pac. 205: 72 Am. St. Rep. 724); *Windle v. Hughes,* 40 Or. 1 (65 Pac. 1058); Hoffman v. Habighorst, 49 Or. 379 (89 Pac. 952, 91 Pac. 20).

"But it is contended by defendants that on May 14, 1903, plaintiff having knowledge of the collateral agreement of May 6, 1903, by which the

corporation agreed to assume and pay the defendants' debt to plaintiff, it agreed to accept the corporation as its debtor and to release defendants, and, by executing the instrument set forth in the sixth finding, did release defendants. The court, however, has made no finding other than that plaintiff signed and delivered to defendants such instruments, and, unless it follows as a necessary legal inference therefrom, it nowhere appears as a fact found by the court that plaintiff ever agreed to or did release defendants, or that it was a part of the agreement of sale between defendants and the purchasing corporation that defendants were to be released by plaintiff. Can such inference be drawn from the wording of the instrument? We think it cannot. * * *"

A novation, in ridding one of the parties to an agreement of his duties and liabilities and substituting for him a new contracting party, effects a change similar to that which is wrought when Holmes' Chambered Nautilus "left the past year's dwelling for the new * * * and knew the old no more." Similar to the act of the Nautilus in sealing off his new "chambered cell" from the old, so a novation is not effected until the rights of the obligor who seeks discharge are completely ended and the new obligor has taken his place.

We do not believe that it is alleged that the rights of Benjamin Pierce in the instrument were ever terminated. He was left in a position in which he could maintain an action for damages similar to the effort which is made by the defendant in his counterclaim. In fact, according to an amended answer which appears in the judgment roll, Pierce actually filed on May 15, 1957, subsequent to Mrs. Cole's death, an action in the circuit court wherein he alleged that he was the owner of the very instrument with which this case

is concerned. He sought damages. The record does not acquaint us with the outcome of the case. An affidavit on behalf of the defendant contains statements similar to those which are set forth in the answer just mentioned.

It will be readily observed that it was important to the plaintiffs that Mr. Pierce's interest in the instrument should have been terminated in the event that a novation was contemplated or effected. As long as he held an interest he could maintain an action similar to the one that constitutes the basis for the counterclaim.

It is our belief that no novation has been plead and that, therefore, the defendant has no interest in the instrument.

The first assignment of error lacks merit. Reasons sufficiently stated show that the second and third assignments of error likewise lack merit.

The judgment of the circuit court is affirmed.