Argued and submitted at Pendleton May 6,
affirmed July 14, reconsideration denied August 21,
petition for review denied October 14, 1980 (289 Or 741)

REAGAN, et al,
*Respondents - Cross-Appellants,*
*v.*
CERTIFIED REALTY COMPANY, et al,
*Appellants - Cross-Respondents.*
(No. L-4255, CA 15468)
613 P2d 1075

Kenneth C. Hadley, Baker, argued the cause for appellants - cross-respondents. With him on the brief was Leuenberger & Hadley, Baker.

Alan J. Schmeits, Baker, argued the cause and filed the brief for respondents - cross-appellants.

Before Schwab, Chief Judge, and Gillette and Warren, Judges.

GILLETTE, J.

**GILLETTE, J.**

This is an action for conversion in which plaintiffs, sellers, alleged that defendant, Certified Realty Company, wrongfully returned money held in a client trust account to certain prospective buyers. The trial court, sitting without a jury, found for the plaintiffs. Defendants appeal from the resulting judgment. Plaintiffs cross-appeal from the failure of the trial court to award punitive damages. We affirm.

■ In their first assignment of error, the defendants contend that the trial court erred in denying their motion for change of venue. In order to challenge an erroneous refusal to grant a change of venue a party must proceed by way of petition for writ of mandamus. *Lee v. Brown,* 264 Or 341, 345, 505 P2d 924, *cert den,* 414 US 830 (1973); *Mack Trucks, Inc. v. Taylor,* 227 Or 376, 382, 362 P2d 364 (1961). The defendant failed to follow the proper procedure; this assignment fails.

■ Defendants' other two assignments of error will be considered together. Defendants assign as error the trial court's failure to grant their motion for involuntary nonsuit at the close of plaintiffs' case. Secondly, they contend that the trial court's judgment for plaintiffs is not supported by the evidence. Since the defendants did not rest upon their motion for nonsuit, but proceeded with their defense, "this court will review the trial court's ruling thereon and will consider the whole record in the same manner as when ruling on a court's failure to grant a motion for a directed verdict." *Ballard v. Rickabaugh Orchards, Inc.,* 259 Or 200, 203, 485 P2d 1080 (1971); *Dell v. K. E. McKay's Market,* 273 Or 752, 757, 543 P2d 678 (1975).

This is an action at law in which the trial judge sat as the trier of fact. Thus, our review is limited to whether the trial court's decision is supported by competent evidence. It is not our function to pass upon the credibility of the witnesses or weigh the evidence, and in such review we are required to view

[37]

the evidence in the light most favorable to the prevailing party below. *Hall v. Gordon,* 284 Or 49, 51, 584 P2d 1374 (1978); *Hendrix v. McKee,* 281 Or 123, 126, 575 P2d 134 (1978). From the evidence viewed in this light, the trial court could have found the following facts:

Plaintiffs, Reagan and Banta, entered into a listing agreement with defendant, Certified Realty Company, whereby they agreed to sell plaintiffs' vendors' contract interest in a piece of land originally known as Tucker Ranch.[1] An offer was made, through the defendants, by Mr. and Mrs. Joslin. Plaintiffs accepted this offer. On April 14, 1978, the money was deposited in a client's trust account maintained by defendant Certified Realty. Plaintiffs executed an assignment of contract equity in the Joslins' favor and informed the Land Title Escrow Company, which was handling the contract, of the assignment. Plaintiffs directed the title company to send all future payments on the contract to the Joslins. The defendants informed the title company that their clients were ready to close. On May 10th, the title company recorded the contract assignment.

The defendants claim that it was understood by all parties that there was to be evidence of a free and clear marketable title before the final closing. Plaintiffs agreed to pay the cost of the title insurance. The Land Title Escrow Company then issued a

---

[1] There was a series of four, somewhat complicated, documents relating to the sale of Tucker Ranch. The 1973 sale was originally between the Tuckers, as sellers, and Hayknife Corporation, as buyer. Plaintiff Reagan was an officer and principal stockholder of Hayknife. In 1976, there was a supplemental contract of sale which recognized Reagan as an original contract purchaser. At the same time, the ranch was sold by Hayknife to Mr. & Mrs. Finke. A supplemental agreement shows the extent of Reagan's and Banta's, interest in the payments made by the Finkes under the contract of sale. Plaintiff Banta's interest was obtained from a loan to plaintiff Reagan, from a commission he earned on the sale of the property, and from money he invested in the Hayknife Corporation.

The defendants received a copy of these various documents which outlined all the interests involved in the Tucker Ranch.

preliminary title report.[2] Staab, Land Title's vice president, testified that he assumed that a policy would be requested eventually, but defendants never directly asked for one. On May 15, defendants wrote to plaintiff Banta indicating that their clients were concerned with the delay and that, on the basis of the documents furnished so far, questions still existed regarding the type of interest being sold. Defendants informed plaintiffs that if they still wished to proceed with the sale the matter should be put in the hands of an independent title insurance company.

On May 24, Staab responded by letter to defendants' request and outlined the instructions for closing. He informed Certified Realty that the sale involved the purchase of an equity in the payments on a contract in favor of plaintiffs. He stated that the purchase was not secured by an equity in land and was subject to the performance of the buyer. On that basis, the defendant concluded that the plaintiffs failed to keep their part of the bargain and provide evidence of marketable title. As a result, the defendants returned the $15,750 to the Joslins.

Defendant, Don Widing, who was president of defendant Certified Realty, testified that he was acting for both the plaintiffs and the Joslins. Both parties were aware of this arrangement, he claimed, but written consent was never secured.[3] He did not inform plaintiffs or secure their consent before withdrawing the money from the trust account. Although there had been some discussion between the defendant Certified Realty and the title company before the letter

---

[2] The preliminary title report issued on March 10, 1978, shows no interest in Tucker Ranch on behalf of Banta or Reagan. It also shows an existing judgment against Alex Finke and Banta. Apparently, any problems with this report were cleared up because, after receiving it, the defendants indicated that the Joslins were ready to close the deal.

[3] *See* ORS 696.301(15), which provides that an agent cannot act for more than one party in a transaction without the knowledge and written consent of all the parties for whom he acts.

of May 24, no attempt was made after that time to communicate the Joslins' objections to the plaintiffs or the title company or inquire as to whether the interest was insurable. Staab testified at trial that, subject to exceptions, such a policy could be issued.

■ Once the plaintiffs accepted the Joslins offer they acquired an interest in the money held in the trust account. *Medak v. DePrez,* 236 Or 31, 36, 386 P2d 805 (1963). The defendants held these funds "in effect as an escrow for both parties." *Id.,* at 35. The plaintiffs assigned their contract interest to the Joslins; this assignment was recorded. Plaintiffs were given no opportunity to secure evidence of marketable title after Staab's letter of May 24. In fact, it is not clear from the evidence just what the Joslins were expecting or entitled to in the way of title. The evidence fails to demonstrate any legal ground for rescission of the contract, and plaintiffs in no way consented to return of the funds. *See Helmer v. Transamerica Title Ins. Co.,* 279 Or 457, 463, 569 P2d 10 (1977); *Medak v. DePrez, supra,* 236 Or at 35. There is sufficient evidence from which the trial court could have found that the defendants intentionally exercised dominion or control over the funds which seriously interfered with the plaintiffs' right to the proceeds of the trust account. *Berkheimers v. Citizens Valley Bank,* 270 Or 807, 812, 529 P2d 903 (1974); *Wood Ind'l Corp. v. Rose,* 271 Or 103, 108, 530 P2d 1245 (1975). The trial court did not err in entering judgment for plaintiffs.

■ We turn now to plaintiffs' cross-appeal. In an appropriate case, punitive damages may be recovered in an action for conversion. *Lewis v. Devils Lake Rock Crushing Co.,* 274 Or 293, 300, 545 P2d 1374 (1976). However, not every conversion entitles the plaintiffs to punitive damages.

"Punitive damages can be justified only under a theory of deterrence. Therefore, if the conversion is merely a technical one and the converter acts

under a good faith, albeit mistaken, belief that he is legally entitled to proceed in that fashion, an award of punitive damages is inappropriate. *Lee v. Wood Products Credit Union,* 275 Or 445, 449, 551 P2d 446 (1976).

The trial court found that the defendants acted in good faith, although mistakenly, in returning the money to the Joslins. In addition, the court found no evidence of such an aggravated breach of the fiduciary relationship that would support an award of punitive damages. *Dickens v. DeBolt,* 288 Or 3, 15, 602 P2d 246 (1979). There is no justification for disturbing the trial court's judgment.

Affirmed.